[Crim. No. 17881. Second Dist., Div. Five. Aug. 7, 1970.]

In re RICHARD A. KARPF on Habeas Corpus.

**COUNSEL**

Richard A. Karpf, in pro. per., and Margolis, McTernan, Smith, Scope & Herring and John T. McTernan for Petitioner.

John D. Maharg, County Counsel, Harold S. Vites and Douglas C. Miller, Deputy County Counsel, for Respondent.

## Opinion

**AISO, J.**—By this application for a writ of habeas corpus, petitioner Richard Karpf seeks a review and an annulment of a judgment of the Municipal Court of the Los Angeles Judicial District (hereinafter "municipal court") adjudging him in contempt and sentencing him forthwith to five days in the county jail.

The contempt proceeding below stems from a felony preliminary examination, People v. Yates, Los Angeles Municipal Court No. A-254089, in which petitioner was the defense counsel and which had commenced on January 13, 1970, in division 43 of the municipal court before the Honorable Nancy B. Goodman. At 5 p.m., she indicated that the proceedings would be adjourned to 9 a.m. the following morning (January 14, 1970) and instructed the witnesses to return at that time without further order. Petitioner objected claiming that the adjournment violated section 861 of the Penal Code. His objection was overruled. Petitioner then informed the court that he had another preliminary examination scheduled for 1 p.m. the following day in division 32 of the municipal court and that he would be held in contempt if he did not appear there. Judge Goodman then advised petitioner that his failure to be in division 43 the following morning might result in his being held in contempt of division 43.

Petitioner had trouble with his car the following morning. He had his secretary call the clerk of division 43 about 8:45 a.m. to inform the court of his car trouble and of his expectation of reaching division 43 around 10 a.m. Upon getting his car into running condition, petitioner passed by the Los Angeles County courthouse, located on First Street extending from Hill Street to Grand Avenue with the municipal courts in that building (including division 32) being located in the portion of the courthouse fronting upon Grand Avenue. Division 43 in which the unfinished preliminary examination in People v. Yates was pending was then located in the Hall of Justice, located at the corner of Broadway and Temple Streets, about a 10-minute walk from the county courthouse.[1] As he passed the county courthouse, petitioner decided to stop by division 32 instead of proceeding directly to division 43, in order to arrange a disposition of his preliminary hearing in People v. Carter, et al., Los Angeles Municipal Court No. A-254174, on the 1:30 p.m. calendar of division 32 for that day.

Petitioner states that he parked in a red zone adjacent to the county courthouse around 9:50 a.m. and reached division 32 around 10 a.m. He was unable to make a satisfactory arrangement for reasons which we

---

[1]We take judicial notice of the location of the courts. (Evid. Code, § 452, subd. (g).)

shall detail later. He left the courtroom of division 32 sometime between 10:15 and 10:30 a.m. He then proceeded to the lock-up room located on the seventh floor of the county courthouse in order to speak to his clients in People v. Carter, et al.

Petitioner talked by telephone to his secretary, who took the call in the courtroom of division 43, about 11:20 a.m., informing her that he would appear in division 43 as soon as he could. He did not tell her of his then whereabouts. Upon being questioned by Judge Goodman, the secretary conveyed the foregoing information to her.

Judge Goodman took the bench at approximately 11:27 a.m., and called People v. Yates for resumption of hearing. At that time, she noted that defendant Yates was present, but that her counsel, petitioner herein, was not present. Declaring that the hearing could not be resumed without counsel's presence, Judge Goodman dismissed the complaint and released the five civilian witnesses and an investigating officer who had been awaiting petitioner's arrival since 9 a.m. She declared petitioner to be in contempt of court and issued a bench warrant for his arrest.

Petitioner was arrested on the warrant in division 32 about 1:30 p.m., and was brought to division 43 in custody. This was his first appearance in division 43 on January 14, 1970.

At around 4:05 p.m. of January 14, 1970, Judge Goodman conducted a hearing in re contempt. Petitioner was represented by counsel. The court orally informed petitioner and his counsel of the purpose of the hearing and offered petitioner an opportunity to explain his absence. Petitioner voluntarily took the witness stand and offered his explanation, but the court found it unsatisfactory, adjudicated him to be in contempt, and sentenced him forthwith to five days in the county jail. His requests for stay of execution and release upon his own recognizance were denied.

To avoid repetition, other details will be related as they become material to the point under discussion.

A previous writ of habeas corpus was granted by a judge of the superior court, but it was discharged upon return thereto and hearing in that court and petitioner was recommitted to the county jail on March 20, 1970, by the municipal court. Upon reading contemner's petition filed in this court on March 20, 1970, we issued an order to show cause why the writ should not issue directed to the municipal court, including an order to the sheriff to release petitioner on his own recognizance pending determination

of the order to show cause, since this is an original proceeding in this court and not an appeal from the superior court. (See *Gardner* v. *California* (1969) 393 U.S. 367, 368 [21 L.Ed.2d 601, 603, 89 S.Ct. 580, 581] and authorities there cited.) Returns to the order to show cause have been filed by the municipal court and the sheriff. Oral argument of counsel on the order to show cause has been had, and supplemental briefs of respective counsel have been filed. We conclude that the writ should be denied for reasons set forth below.

■ It is the settled law of California that for pragmatic considerations in the administration of justice (*Inniss* v. *Municipal Court* (1965) 62 Cal.2d 487, 490 [42 Cal.Rptr. 594, 399 P.2d 50]), the failure of an attorney to appear without excusable cause at the appointed date and hour set for the commencement or resumption of judicial proceedings in which he is a counsel constitutes a direct contempt of court (*Chula* v. *Superior Court* (1962) 57 Cal.2d 199, 203 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421]; *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755, 759 [278 P.2d 681], cert. denied 350 U.S. 876 [100 L.Ed. 774, 76 S.Ct. 121]; *Vaughn* v. *Municipal Court* (1967) 252 Cal.App.2d 348, 361 [60 Cal.Rptr. 575], cert. denied 393 U.S. 856 [21 L.Ed.2d 126, 89 S.Ct. 125]) or a hybrid contempt[2] that may be summarily treated as if it were a direct contempt in the court's presence (*Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 408 [42 Cal.Rptr. 441, 398 P.2d 777]). "In such cases, due process requires notice and hearing lest the alleged contemner be convicted ex parte. [Citation.] ■ Where counsel fails to appear, however, the offensive conduct, to wit, the absence, occurs in the presence of the court. Thus, when an absent attorney reappears in the courtroom, due process should be satisfied if the judge confronts him with the charge and offers him a reasonable opportunity to explain." (*Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 408-409.)

■ Where the absence or tardiness, with its ensuing interruption of the proceedings pending before the court, is occasioned by some cause not reasonably within the attorney's control, the duty of explanation and the burden of producing exculpatory facts are upon the defaulting attorney. (*Lyons* v. *Superior Court, supra,* 43 Cal.2d 755, 760; *Vaughn* v. *Municipal Court, supra,* 252 Cal.App.2d 348, 361.) ■ It is also established law that "[i]n the absence of arbitrariness on the part of the sentencing judge, and with a showing that a reasonable opportunity was afforded the attorney to explain the reasons for his absence, this court should not annul contempt proceedings against attorneys who fail to appear in court when properly ordered to do so." (*Arthur* v. *Superior Court, supra,* 62 Cal.2d

---

[2]The constituent elements of both direct and indirect contempt being involved.

404, 409; accord *Vaughn* v. *Municipal Court, supra,* 252 Cal.App.2d 348, 365; and see *Inniss* v. *Municipal Court, supra,* 62 Cal.2d 487, 490, and *Mowrer* v. *Superior Court* (1969) 3 Cal.App.3d 223, 229 [83 Cal.Rptr. 125].)

The scope of review upon an application for a writ of habeas corpus is identical to that by way of a writ of certiorari (writ of review) (*Wilde* v. *Superior Court* (1942) 53 Cal.App.2d 168, 176 [127 P.2d 560]; *In re Lake* (1924) 65 Cal.App. 420, 423 [224 P. 126]), namely, whether the act or omission charged against the alleged contemner confers jurisdiction to adjudicate the contempt and whether the jurisdictional act or omission is supported by the evidence. (See, *Arthur* v. *Superior Court, supra; In re Ciraolo* (1969) 70 Cal.2d 389, 394 [74 Cal.Rptr. 865, 450 P.2d 241].)

In case of a direct contempt, all that is required is that an order be made reciting the facts constituting the contempt, adjudging the person guilty and prescribing the punishment. (Code Civ. Proc., § 1211; *In re Ciraolo, supra,* at p. 393.) If the order states that the attorney "was absent when ordered to appear, that he knew he was required to appear, that he had the ability to appear, and that he wilfully neglected to appear," the responsibility of the reviewing court is merely to ascertain whether there was sufficient evidence before the trial court to support its order. (*Arthur* v. *Superior Court, supra,* 62 Cal.2d 404.) In such a case, "the review of the evidence is limited to determining whether there was any substantial evidence before the trial court to sustain its jurisdiction. The power to weigh the evidence rests with the trial court. [Citations.]" (*Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 485 [94 P.2d 983] [reversed on other grounds, 314 U.S. 252 (86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346)]; accord *In re Ciraolo, supra,* 70 Cal.2d 389, 394.)

The judgment of contempt in the instant proceeding includes the following recitals which comply with the requirements set forth above: (1) an order by the court when it adjourned for its evening recess at 5 p.m. on January 13, 1970, directing petitioner to appear at 9 a.m. the following morning (January 14, 1970) and that a failure to do so "might result in [his] being held in contempt"; (2) that he knew he had to appear; (3) that he failed to appear "at 9:00 a.m. or within a reasonable time thereafter, or at all, until brought before the Court by the bailiff"; (4) that he had the ability to appear within a reasonable time after the appointed hour, but that he wilfully failed to appear. The judgment summarizes explanations offered by petitioner, but they are found to be "wholly unsatisfactory." It adjudges petitioner in contempt and sentences him to five days in the county jail.

Petitioner seeks refuge in the rule that a void order cannot constitute

the basis of a contempt adjudication (*Wutchumna Water Co.* v. *Superior Court* (1932) 215 Cal. 734, 736 [12 P.2d 1033]; *Mowrer* v. *Superior Court, supra,* 3 Cal.App.3d 223, 229-230) by attacking the validity of the order adjourning the uncompleted preliminary hearing from 5 p.m. to 9 a.m. the following morning.[3] ▪ He claims, as he did in the trial court at the time of adjournment, that the adjournment without an affidavit showing good cause therefor violated the provisions of section 861 of the Penal Code, providing: "The examination must be completed at one session, unless the magistrate, for good cause shown by affidavit, postpone it. The postponement cannot be for more than two days at each time, nor more than six days in all, unless by consent or on motion of the defendant." He contends that the overnight adjournment or recess prevents the hearing or examination from being completed in one session. We do not agree.

▪ The word "session" does not have a single fixed and definite meaning, but is variously used in statutes and constitutions. It is at times "employed to indicate an actual sitting continued by adjournments in ordinary course from day to day, or over Sundays and holidays, but not interrupted by adjournment to a distant day." (*United States* v. *Dietrich* (C.C. 1904) 126 F. 659, 660; see, also, 79 C.J.S., Session or Sessions, pp. 1145-1147.) The meaning is to be ascertained by reference to the context in which it is used and the purpose of the statute in which the word is employed. ▪ We hold that the foregoing meaning is the sense in which "session" is used in section 861 of the Penal Code. Petitioner's contention would render the word "session" synonymous with "day" also used in the same paragraph. If the Legislature meant "one day" by employing "one session," it could have used the word "day" instead of "session." When the Legislature has used the two different words, not identical in meaning, in the same paragraph, it is presumed that the Legislature knew the distinction in the meanings between the two and used the two words "session" and "day" intending them to have a different meaning and effect. (Cf. *McCarthy* v. *Board of Fire Comrs.* (1918) 37 Cal.App. 495, 497 [174 P. 402]; *People* v. *Campbell* (1930) 110 Cal.App.Supp. 783, 786 [291 P. 161].) The requirement of an affidavit is for a postponement. "[T]he word 'postpone' carries with it the idea of deferring the doing of something or the taking effect of something until a future or later time.

---

[3]The preliminary examination started at 11:45 a.m. At 11:55 a.m. an adjournment for the noon recess was taken. The hearing was resumed at 1:40 p.m. and was interrupted only for an afternoon recess from 2:50 p.m. to 3:15 p.m. Petitioner had indicated at the outset of the hearing that his estimate of the time which would be required for the hearing was five to seven hours. The district attorney had indicated that there were six witnesses in the case. There was some colloquy between the court and petitioner that petitioner had prolonged his cross-examination in order to lay a basis for making his objection to the overnight adjournment.

. . ." (*Gartner* v. *Roth* (1945) 26 Cal.2d 184, 188 [157 P.2d 361].) The municipal court was correct in holding that postponement is different from a temporary cessation or interruption in proceedings compelled by the needs of the human body for periodic visits to the bathroom, or for rest, food, and sleep, or to observe a legal holiday. ▇ In applying a statute the court should attach that significance to its language which is consistent with sound common sense and which will not be productive of absurd consequences. (See, *e.g., City of Escondido* v. *Municipal Court* (1967) 253 Cal.App.2d 801, 805 [61 Cal.Rptr. 362].) *People* v. *Bucher* (1959) 175 Cal.App.2d 343 [346 P.2d 202], cited by petitioner, is distinguishable in that it deals with a postponement albeit a short one.

▇ In this connection, it should be further noted that a claim of good faith under a mistake of law does not excuse disobedience of an order of court otherwise constituting a contempt. (*City of Vernon* v. *Superior Court* (1952) 38 Cal.2d 509, 518 [241 P.2d 243].) ▇ In this case, moreover, petitioner did not at the hearing in re contempt seek to justify his failure to appear in division 43 upon the ground that he was testing the validity of the order adjourning proceedings from 5 p.m. to 9 a.m. the following morning.

▇ Contrary to petitioner's contention, the evidence supports the finding that when petitioner advised the court that he had to be in division 32 at 1 p.m. on January 14, 1970, he was directed to appear in division 43 at 9 a.m. on January 14, 1970, and that his failure to appear might result in his being held in contempt. Petitioner understood the latter phrase to mean, "Well, if you don't appear here in my court you are going to be in contempt."[4] It is true that the court did not specifically state to petitioner "9 a.m." in those words. However, it is clear that the hour of 9 a.m. was the hour intended. This is not a case where it is necessary to fall back upon an order implied in its entirety, which in itself would have been adequate to sustain the contempt. (*Lyons* v. *Superior Court, supra*, 43 Cal.2d 755, 756-757, 759.)[5]

---

[4]Reference is made to Exhibit IV, a reporter's transcript of what transpired in division 32 (Judge Olson's court) on January 14, 1970, lodged by petitioner with this court. "[W]e may receive and consider the evidence of petitioner given before this court, not to impeach the record made in the court below but to supplement and explain it and to develop the true facts upon which must rest the question of the jurisdiction of the [municipal] court to punish petitioner for contempt." (*Wilde* v. *Superior Court, supra*, 53 Cal.App.2d 168, 176; *In re Clarke* (1943) 60 Cal.App.2d 21, 27 [140 P.2d 92].)

[5]"An attorney's duty to attend court at a particular time may be traceable to a court's express order to be present at that time for a given purpose, or to an implied direction to return to the courtroom at a stated time, as where a court announces a recess or continuance of a proceeding. . . ." (97 A.L.R.2d p. 434.)

Relevant portions of the reporter's transcript in this regard are set forth in the footnote.[6] No lawyer in petitioner's position could have construed this colloquy other than an order to appear at 9 a.m. the following morning.

Furthermore, in the hearing re contempt in the municipal court, petitioner admitted that such an order had been made and that proof thereof by reading the reporter's transcript back to him was unnecessary. Admissions by an alleged contemner in open court constitute evidence to support a finding. (*Gendron* v. *Burnham* (1951) 146 Me. 387, 404 [82 A.2d 773, 784].) In some states, it has even been held that "[c]ontempts committed out of the presence of the court, if admitted by the contemner in open court, may also be punished summarily as a direct contempt." (See, *e.g., People* v. *Pomeroy* (1950) 405 Ill. 175, 180 [90 N.E.2d 102, 104].)

 The evidence shows that the court formally took the bench in the pending preliminary hearing (People v. Yates, Los Angeles Municipal Court No. A-254089) at 11:27 a.m. on January 14, 1970, then and there noted that defendant was present,[7] but that her attorney (the petitioner

---

[6]"THE COURT: Counsel, we have reached the time for the evening recess and, therefore, I have directed the bailiff to get the witnesses who were directed to remain in the hallway.

"MR. KARPF: Well, your Honor, there is a provision in the Code about completing a preliminary examination in one day.

"THE COURT: Perhaps we better be sure you have all of your remaining witnesses here, Mr. Byrne [Deputy District Attorney]. Would you read off their names, and if you are present in the courtroom, would you please so indicate.

[Mr. Byrne reads six names.]

"THE COURT: All right, ladies and gentlemen, at this time we are going to take the evening recess. All witnesses in this matter are ordered to return to this division at 9:00 a.m. tomorrow morning—

"MR. KARPF: May it please the Court—

"THE COURT: Just a moment, please, sir. I am not through directing the witnesses. [¶] —at 9:00 a.m. tomorrow morning, which is January 14, 1970, without further order, notice, or subpoena, and are excused at this time for the evening recess.

". . . . . . . . .

"MR. KARPF: Well, that's stretching the section [referring to court's interpretation of section 861], your Honor; with all respect I say that. [¶] I also have a preliminary examination tomorrow in Division 32, for which I was engaged before the adjournment this evening. I will be in contempt of court if I don't appear there.

"THE COURT: You may be in contempt of court if you don't appear here.

"MR. KARPF: I don't think I have to have that burden placed on me, your Honor. It's not required of an attorney, or any other person, that he be in two places at the same time.

"THE COURT: That is true, sir. But this matter has already commenced. If I take your remarks correctly, the other matter has not. [¶] If you will give me a moment so I may complete instructing the witnesses. [¶] As previously indicated, all witnesses are ordered to return tomorrow morning to this division at 9:00 a.m. without further order, notice, or subpoena, and are excused at this time for the evening recess. We will resume at 9:10. The Court stands in recess."

[7]Cf. Code of Civil Procedure section 139, providing that court attaches need wait

herein) had failed to appear and since the proceeding could not be completed without his presence, the complaint against defendant Yates was being dismissed and the witnesses excused. The absence of petitioner at this time occurred in the court's presence. The judgment states that the contempt was in the view and presence of the court. Petitioner's reliance on *Morales* v. *Superior Court* (1966) 239 Cal.App.2d 947 [49 Cal.Rptr. 173], is misplaced. There the judge never did take the bench to personally observe the attorney's absence as Judge Goodman did at 11:27 a.m. In *Morales*, upon the sole occasion on which the judge took the bench, the attorney was in fact present. The absence on which the contempt rested was supported only by secondary hearsay obtained by the judge from his court attaches. There was no necessity for the court to have taken the bench and called the case at 9 a.m., when it is undisputed that petitioner's secretary phoned the clerk of the court and stated that petitioner had car trouble and expected to be in court about 10 a.m. "The law neither does or requires idle acts." (Civ. Code, § 3532.) Petitioner was not held in contempt for failing to appear at 9 a.m. or even 10 a.m., but for ultimately not appearing at 11:27 a.m., or at all until he was arrested in division 32 at approximately 1:30 p.m. and brought in the marshal's custody to division 43.

Petitioner next contends that the judgment re contempt is defective because it fails to state facts establishing that the alleged offense was wilful. In this connection, he contends that the finding "that he had the ability to appear within a reasonable time" is defective and that to support the contempt adjudication, there must be a finding that petitioner was able to appear at 9 a.m. While the purported finding that petitioner "wilfully failured (*sic*) to appear" might be more of a conclusion, rather than a finding of fact, it is a conclusion adequately supported by the other findings set forth in the judgment and which in turn are supported by the evidence. It is undisputed that petitioner had not appeared in division 43 up to the hour of 11:27 a.m. on January 14, 1970, when the judge took the bench. In fact by his own statement he did not appear at all until brought to division 43 in custody. We need not linger over petitioner's original car troubles of which his secretary apprised the court clerk at 8:45 a.m. ▮ Where the professed excuse of the attorney contains an admixture of both excusable and non-excusable causes, it is sufficient to sustain the adjudication of contempt if the failure to appear is attributable to the non-excusable causes. (*Lyons* v. *Superior Court, supra,* 43 Cal.2d 755, 762-763.)

only one hour for a judge to make his appearance at an appointed time before adjourning court to 10 a.m. the following court day.

█ The evidence shows that after petitioner got his car running again and that when he passed by the Los Angeles County Courthouse he decided to stop at division 32, located therein, instead of proceeding directly to division 43 in the Hall of Justice. Petitioner states that he parked his car about 9:50 a.m. in a red zone outside the courthouse and reached division 32 in the courthouse at around 10 a.m. In the words of petitioner, "I thought I would give the Judge of that court, Judge Olson, the courtesy of appearing personally, since I had anticipated only another five or ten minutes delay in getting to . . . Division 43." He further testified on the contempt hearing that his failure to obtain a continuance in People v. Carter et al., scheduled for the afternoon calendar in division 32, was due to the deputy district attorney's objecting to a continuance.[8]

Petitioner further testified: "So I then left the Courthouse, after these matters, and again experienced difficulty with my car. By the time I got over here [11:55 a.m. or 12 o'clock], it was the recess hour and there was no sense in coming up to this courtroom." Petitioner then alluded to the parking difficulties around the Hall of Justice. "The parking lots are full. I knew I'd never be able to park my car in time and get up to this courtroom. [¶] I then learned from my secretary, who met me here, that

---

[8]Noting pages 2-3, 6, and 8 of Exhibit IV (reporter's transcript of proceedings in division 32) lodged by petitioner in this court, we note upon this review (*Wilde* v. *Superior Court, supra,* 53 Cal.App.2d 168, 176; *In re Clarke, supra,* 60 Cal.App.2d 21, 27) that the real reason for the delay and inability of petitioner to arrange his matters expeditiously in division 32 was his refusal to waive and his representing to Judge Olson that he would instruct his clients to refuse to waive time, upon Judge Olson's suggestion that he would continue the matter over a day and a half to 9 a.m. Friday, January 16, 1970, over the prosecutor's objection. Petitioner also objected to Judge Olson trailing the examination in Carter and Rone until petitioner concluded his preliminary examination then pending completion in division 43. When the district attorney called Judge Olson's attention to the fact that a waiver required a personal waiver by the defendants, the following transpired:

"THE COURT: I am going to wait until the defendants get up here.

"MR. KARPF: Then in the meanwhile, your Honor, I will probably be arrested until I get over to Division 43.

"THE COURT: I wouldn't be surprised. I have been asked by her to order you over to Division 43 forthwith.

"MR. KARPF: Shall I leave then, your Honor, or shall I remain? I will follow the Court's advice.

"THE COURT: This is on our 1:30 calendar.

"[PROSECUTOR]: Yes, your Honor.

"THE COURT: I think the best thing for you to do is get back to Division 43. I will have the defendants here if you can manage to get here, otherwise why don't you get another person to represent the defendants for this motion? You won't waive time and you can't hear the case. How can I grant your motion?

". . . . . . . . . . . . . .

"THE COURT: . . . . I don't want to argue with you, I want to accommodate you.

"MR. KARPF: I will be here at 1:30, your Honor.

"THE COURT: Fine, that will end that. The case of the People versus Fred L. Carter and Charles Rone will be scheduled on the 1:15 calendar."

the case had been dismissed by your Honor and, therefore, I felt that there was no further necessity, since there was no case then pending before your Honor. [¶] I had informed this Court . . . that I was expected at Division 32 at 1:00 p.m., so I knew that if it was necessary for the Court to find me for any reason, whether to chastise me or for whatever purpose, that I could be found in that division at that time."

The court then stated for the record, the following, inter alia: "[A]t 10:05 the Court spoke with the . . . Judge presiding in Division 32, and was advised that you were at that time present in that courtroom and that, apparently, for the purpose of making a motion.[9] [¶] At approximately 10:17 the Court was advised by the Clerk of Division 32 that you had concluded your business and had left Division 32 at 10:16 a.m."[10] As earlier noted, at approximately 11:20 a.m. petitioner's secretary received a telephone call in the courtroom of division 43. She was summoned into chambers and was asked if the call was from petitioner, to which she replied that it was. Upon further inquiry, she said that petitioner had stated that he would come to division 43 as soon as he could. Petitioner acknowledges this telephonic conversation with his secretary and admits that he did not speak to the judge, bailiff, or clerk[11] at that time and that he did not inform his secretary as to his then whereabouts.

In reply to a question put to him by his counsel, Mr. Sperber, petitioner stated, "I was going to get here as quickly as I could get the problem solved with the automobile." The court then interjected: "Well, we weren't advised of any further automobile trouble. [¶] Isn't it a fact, Mr. Karpf, that after leaving Division 32 sometime shortly after 10:00 a.m. this morning, that you did not attempt to proceed directly here but that you proceeded to the lock-up in the Los Angeles County Courthouse?" Petitioner then represented that his clients were in Judge Olson's court when he left. It struck him that he should have spoken to them before leaving division 32, so he returned to division 32 to find them, but discovered that they were not there. "I then proceeded to the seventh floor lock-up so

[9]Petitioner's contention that it is improper for the judge ruling upon the contempt to make inquiries out of his presence is taken up below.

[10]Petitioner thought, though he admitted that he might be in error, that it was considerably later than 10:15, closer to 10:30 a.m., when he left division 32, but this discrepancy is not of moment.

[11]In *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 410, 411 [42 Cal.Rptr. 441, 398 P.2d 777], the court stated that, where possible, courtesy dictates advising the judge personally, but that this is not an inflexible rule. Nevertheless, stated the court: "An attorney should notify *a responsible officer of the court* as soon as he realizes he will be unable to appear at the scheduled time. By failing to do so, an attorney assumes the risk that he may be in contempt if the reason for his absence is later deemed insufficient to constitute a valid excuse." (Italics added.)

that they would not be kept in the dark as to what was transpiring, because during the proceedings I had noticed on their faces a look of some alarm. From the discussion, they sensed that I had a problem and they were concerned lest I would not appear on their behalf. I felt it my duty as an attorney to comfort them in that concern, so I did go to the lock-up to tell them specifically what the nature of the difficulty was and to tell them not to worry, that, at the worst, if I could not make it to Division 32 at 1:30 today, because I would be engaged here, they should just tell the Judge what the problem was, again remind him, because Judge Olson has many matters on his mind, as this Court does, remind him that I was engaged in Division 43. And as a matter of fact, my visit to the lock-up and my discussion with my clients would tend, if the Court requires any corroboration, to prove what I have said, that it was my full intention to proceed to Division 43."[12]

The court found that the explanation was not acceptable, "it appearing to the Court that business either in another division in which he had no matter calendared at that time was engaging himself, and, further finding that it appears, from Mr. Karpf's own statements, that he put that matter, in addition to the matter of seeing his clients—in fact, it appears in all matters that occupied him during the morning of January 14th, 1970—before the business of this court."

"This court must accept the judge's factual determination." (*Vaughn* v. *Municipal Court, supra,* 252 Cal.App.2d 348, 358.) As earlier noted, the issues of credibility (*Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 410) and of weight to be given the explanation (*In re Ciraolo, supra,* 70 Cal.2d 389, 394) are for the trial court to determine. Our responsibility is limited to determining whether there was substantial evidence to support the findings to sustain the trial court's jurisdiction in re contempt. The findings made by the trial court are supported by substantial evidence.

There was patent inconsistency in petitioner's protestations, on one hand, that he considered it a courtesy to the judge in division 32 to *appear personally* before him to inform him of his predicament and of his duty to inform his clients in People v. Carter et al. as to his whereabouts (to the extent of detouring while he had his car parked in a red zone and was already approximately one and one-half hours late for the resumption

---

[12]Cf. footnote 8 *supra*. The implication of the proceedings reported in division 32 is that petitioner's clients (Carter and Rone) were not in the courtroom before petitioner left division 32 in the morning. The proceedings also reflect an admonition or advice by Judge Olson to petitioner to return to division 43 forthwith.

of the hearing in People v. Yates), and his complete neglect, on the other hand, of any attempt to personally communicate with the judge or any responsible court official in division 43[13] and his lack of concern for the welfare of his client Yvonne Patricia Yates. Wilfulness in his conduct or omission towards the court in division 43 can be drawn from these facts alone. On review, we also note that petitioner disregarded Judge Olson's advice to get back to division 43. █ Wilfulness is merely "a purpose or willingness to commit the act, or make the omission" in issue in the contempt hearing. (*Lyons* v. *Superior Court, supra,* 43 Cal.2d 755, 759.) "We would not construe 'willful' as pertaining to contempt as meaning only a deliberate intention to disregard a court order, but rather as encompassing an indifferent disregard of the duty to obey it promptly." (*In re Burns* (1958) 161 Cal.App.2d 137, 142 [326 P.2d 617].) █ █ Thus the recitals in the judgment, "Mr. Karpf's failure to appear was wilful" and "he wilfully failured (*sic*) to appear" whether they be findings or conclusions are properly supported by the evidence.

█ Petitioner contends that due process was violated in that he was not given adequate warning and time within which to adequately prepare his defense. The record in this case shows that petitioner and his counsel, Mr. Sperber, were specifically advised that a hearing why petitioner should not be held in contempt[14] was being conducted and that unless petitioner came up with a proper excuse, he would be held in contempt. Petitioner was given the opportunity to explain. He voluntarily took the witness stand in his own behalf. In hindsight, it might have been better if the court after citing the petitioner had set the hearing itself for another day. However, neither petitioner, who is apparently an experienced[15] criminal lawyer, nor his counsel, Mr. Sperber, asked for a continuance.[16] The record itself shows Mr. Sperber stated that when he was contacted he was in the office of the Civil Liberties Union. Counsel Sperber is well known to the courts in this area as a thoroughly competent lawyer, particularly in the areas pertaining to a person's individual constitutional rights. It is too late at this time to complain that a more propitious time should have been set for the hearing in re contempt. Petitioner's own testimony reveals that he knew that he might be wanted as an accused contemner as early as the

---

[13]No inability of petitioner to personally contact the court, especially at the time he talked to his secretary who took the call in division 43, was shown. (Cf. *Mowrer* v. *Superior Court, supra,* 3 Cal.App.3d 223, 227-228.)

[14]"MR. SPERBER: You're treating it as a contempt *coram judice*?

"THE COURT: I am treating it as a direct contempt of this court by his failure to appear in court when ordered to do so."

[15]The Martindale-Hubbell Law Directory gives 1960 as the year of his first admission to the bar.

[16]The only request bordering on this issue was for a stay of execution to permit an appellate review.

noon hour of January 14, 1970. The requirements of due process were met. (*Lyons* v. *Superior Court, supra,* 43 Cal.2d 755, 759.)

Petitioner contends that it was improper for the judge to make ex parte investigations as to petitioner's whereabouts or to base the court's cross-examination of the alleged contemner upon hearsay evidence obtained from sources unknown to the alleged contemner. There is a point, of course, where the activities of the judge in this regard may manifest the purpose thereof as being a personal vendetta against the contemner, rather than the maintenance of the dignity and respect of the court as an institution. However, as long as a direct contempt is by nature a proceeding wherein the judge must of necessity seek the vindication of the dignity, respect, and authority of the court in proper circumstances and must elicit evidence to uncover the true facts, some investigation on the judge's part is an unavoidable necessity. A judge's having telephoned another department or division of his court to ascertain whether a nonappearing attorney is there does not disqualify him from hearing the contempt. (Cf. *In re Clawans* (1964) 69 N.J.Super. 373, 376-377 [174 A.2d 367, 369], cert. denied, 370 U.S. 905 [8 L.Ed.2d 401, 82 S.Ct. 1250].) Nor is it improper for the court to call the attorney's office, through court attaches, to try to locate a missing counsel. (*Vaughn* v. *Municipal Court, supra,* 252 Cal. App.2d 348, 354; *People* v. *McDonnell* (1940) 307 Ill.App. 368, 370 [30 N.E.2d 80, 81], affirmed 377 Ill. 568 [37 N.E.2d 159].) In fact, such inquiries are absolutely indispensable in deciding whether to hold the parties and witnesses and other counsel and await the offending attorney's appearance or to otherwise dispose of the pending judicial proceeding and permit these innocent persons to go their way instead of standing idly by. In this case, there were five civilian witnesses and an investigating officer waiting to be examined.

Fortunately for the bench and bar, it is relatively rare that an attorney-at-law violates his duty of being forthright and truthful to the court. It does nevertheless happen that there are occasions when an attorney will "seek to mislead the judge or . . . judicial officer by an artifice or false statement" (Bus. & Prof. Code, § 6068) in violation of the statutory duty set forth in that statute. The record in this very proceeding reflects a lack of complete candor as to what actually transpired in division 32 on the morning of January 14, 1970. The petitioner's detour to the lock-up room on the seventh floor of the county courthouse surfaced only through the court's questioning. The maintenance of the dignity and authority of the

court and the due administration of justice do not require, in our opinion, that the judge about to handle a direct contempt proceeding must completely refrain from any and all inquiries as to a tardy or truant attorney's whereabouts. To condemn such practice entirely is to emasculate completely the contempt powers of the court, for no explanation, no matter how untruthful, could be challenged. In most contempt cases of the nature here involved, the attorney is not one whose sensitiveness to his duties as an officer of the court is exemplary. While any hearsay information which the judge may have obtained by his inquiries outside of the hearing in re contempt cannot sustain a judgment of contempt (*Morales* v. *Superior Court, supra,* 239 Cal.App.2d 947, 951; cf. *Gendron* v. *Burnham, supra,* 146 Me. 387 [82 A.2d 773]), we see no unfairness in posing questions on cross-examination based upon such information when the attorney has volunteered himself as a sworn witness and has given an explanation which he knows to be incomplete. The municipal court forthrightly set forth in the contempt judgment the information which it had obtained and with which it had confronted the petitioner. It recites the explanations or excuses offered by the alleged contemner as required by *In re Mackay* (1934) 140 Cal.App. 400, 402-403 [35 P.2d 385], and found them to be unsatisfactory.

■ Finally, petitioner complains that the five-day sentence is severe and thereby constitutes cruel and inhuman punishment. The punishment meted out was within the statutory limits prescribed by section 1218 of the Code of Civil Procedure, which permits the imposition of five days' imprisonment or a fine of $500 or both. Consequently, it was not excessive as a matter of law. We also note that, since the judgment did not prescribe that the five days be days of 24 hours each, petitioner having been imprisoned a part of a day on two different occasions, there remains unexecuted only three days of the five-day sentence to the county jail. Since we properly have before us only the question of jurisdiction, we are not empowered to disturb the sentence. The matter of mitigation is that of the court which originally imposed sentence. (*Lyons* v. *Superior Court, supra,* 43 Cal.2d 755, 763; *City of Vernon* v. *Superior Court, supra,* 38 Cal.2d 509, 520.) "The trial court . . . on its own motion or on application by [petitioner], may remit the unexecuted provision of the judgment" or any part thereof. "The argument based on the mitigating circumstances . . . may in all propriety be addressed to that court, and it is to be presumed that it will take into consideration such mitigating circumstances and make an order appropriate in the premises." (*City of Vernon* v. *Superior Court,*

*supra.*) The record is not entirely devoid of matters that fall short of impugning jurisdiction, but are worthy of consideration on the issue of mitigation.

For the reasons which we have stated above, the writ of habeas corpus is denied; the order to show cause is discharged.

Kaus, P. J., and Selber, J.,* concurred.

Petitioner's application for a hearing by the Supreme Court was denied October 1, 1970.

---

*Assigned by the Chairman of the Judicial Council.