[No. A077286. First Dist., Div. Three. Nov. 18, 1997.]

JACK C. RUNNION, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and TIMEC,
Respondents.

278

---

**COUNSEL**

Jack C. Runnion, in pro per., for Petitioner.

Randall Paddock, Schmit, Morris, Bittner & Schmit and Robert A. Ruby for Respondents.

---

**OPINION**

**PHELAN, P. J.**—By this petition, Attorney Jack C. Runnion challenges the Workers' Compensation Appeals Board's (Board) approval of an order awarding sanctions against him and holding him in contempt. The workers' compensation judge (WCJ) held Runnion in contempt and sanctioned him for failing to appear at a scheduled hearing. The Board sustained the WCJ's actions. We conclude the Board properly sustained the sanctions but erred in permitting the contempt order to stand. Board regulations authorize sanctions of various kinds for failing to appear, but they do not mention contempt. We question holding Runnion in contempt in this situation, where he was not directly ordered to appear for the neglected hearing. Moreover, the contempt order was deficient and must be set aside.

## Facts and Procedural History

Runnion claims he never represented injured worker Anthony Gore on his workers' compensation claim, but the evidence suggested otherwise. Runnion's business card was attached to Gore's claim against his employer, TIMEC, Runnion's name appeared on a subpoena for TIMEC's records, and Runnion signed a stipulation as "Attorney for Anthony Gore."

In 1995 TIMEC filed an application for adjudication of Gore's claim. While preparing its case, having learned that Gore was currently working part time, TIMEC sought records concerning Gore's employment. On May 31, 1996, TIMEC sought assistance from the WCJ, claiming Runnion would not cooperate with TIMEC's written requests.

The WCJ noticed a hearing, described in the notice as a "Law and Motion Conf.," for July 3, 1996, with a notation that TIMEC was requesting information regarding Gore's current employment. The notice was addressed only to Gore and to TIMEC, but it appears to have been served on attorneys for both. Neither Gore nor Runnion appeared for the conference/hearing. TIMEC was represented only by Sue Evans, its claims administrator. When Evans called Runnion by telephone from the hearing location, Runnion advised her he had no intention of appearing and that if she wanted the information, she could depose Gore. Upon learning this, the WCJ issued an order to show cause re contempt and awarded Evans her costs for preparing the discovery request and for appearing at the conference/hearing.

Runnion appeared before the WCJ to show cause on August 21, 1996. He took the position that the missed hearing was equivalent to a law and motion conference in a civil court and asserted that his appearance was not required if he did not oppose the motion. In an offer of proof, Runnion admitted to the WCJ that he had received notice of the hearing and had concluded that he did not need to appear. The WCJ ordered written briefing, to be followed by submission of the case.

Runnion filed a one-page letter citing rules and statutes applicable to civil court actions. He stated that he had expected the WCJ would deny the motion and would require TIMEC to proceed by deposition. TIMEC answered with a citation to Labor Code section 5813[1] as authority for sanctions and contempt. TIMEC also argued that the hearing notice unambiguously required Runnion to appear by stating: "You are hereby notified that the above entitled case is set for hearing before the Division of Workers' Compensation of the State of California. Continuances are not favored and

---

[1]Unless otherwise indicated, all statutory references are to the Labor Code.

will be granted only upon clear showing of cause. Please arrive before scheduled appearance time." TIMEC questioned the applicability of Runnion's cited civil court rules and statutes and argued that, if they applied, Runnion did not comply with them.

The WCJ concluded Runnion had no valid reason for failing to appear and fined him $250 for contempt. She also awarded TIMEC $211.93 in costs for appearing at the conference/hearing and future costs, including attorney's fees, for deposing Gore. The exact amount of these costs was left to the informal adjustment by the parties, with the WCJ's jurisdiction reserved.

Runnion petitioned to the Board for reconsideration of the WCJ's decision. On December 30, 1996, the Board denied reconsideration. This petition followed.

## Contentions

 Runnion contends the Board had no jurisdiction over him because he was not Gore's attorney and he was never properly served with a notice of contempt or a declaration stating the facts constituting the contempt. He argues that he was not guilty of contempt because he did not act in bad faith or intend to disrupt or delay the proceedings. He claims he had a reasonable justification for missing the hearing, based upon his belief that his appearance was not required. He believes the WCJ should have heard the matter in his absence, not held him in contempt or sanctioned him.

Runnion also argues that the WCJ denied him due process because she did not disqualify herself despite her personal knowledge of disputed evidentiary facts and embroilment in the incident. He asserts the WCJ denied him equal protection by failing also to hold TIMEC's attorney in contempt for not attending the conference/hearing.

Runnion attacks all aspects of the WCJ's exercise of discretion, beginning with her decision to schedule the neglected hearing and including the award of sanctions in an undetermined amount and attorney's fees to a claims administrator.

## Contempt

Pursuant to section 5309, the Board may direct a WCJ to issue "all necessary process in proceedings for direct and hybrid contempt in a like manner and to the same extent as courts of record." The statute also defines hybrid contempt as contempt arising from acts occurring in the immediate presence of the WCJ for reasons occurring outside the WCJ's presence.

Through title 8, section 10348, of the California Code of Regulations, the Board has authorized WCJ's to "issue writs or summons, warrants of attachment, warrants of commitment and all necessary process in proceedings for direct and hybrid contempt in a like manner and to the same extent as courts of record."

Code of Civil Procedure section 1209 governs contempt in courts of record and provides, in subdivision (a), that various acts are contemptuous, including: "1. Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding;

". . . . . . . . . . . ". . . . . . . . . . .

"4. Abuse of the process or proceedings of the court, or falsely pretending to act under authority of an order or process of the court; [¶] 5. Disobedience of any lawful judgment, order, or process of the court; . . .

". . . . . . . . . . . ". . . . . . . . . .

"8. Any other unlawful interference with the process or proceedings of a court."

In its brief to the Board, TIMEC implicitly conceded that Runnion's contempt was not for violating a court order and argued the contempt order was justified under Civil Code Procedure section 1209, subdivision (a)1, "[d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court" or by subdivision (a)4, "[a]buse of the process or proceedings of the court." In this court, TIMEC reverses course and recasts its original argument to the WCJ, claiming here that the hearing notice was not merely an invitation to Runnion but was an order to appear.

Dicta in *Crawford v. Workers' Comp. Appeals Bd.* (1989) 213 Cal.App.3d 156, 169 [213 Cal.App.3d 156, 259 Cal.Rptr. 414] (*Crawford*) and *Hustedt v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329, 348 [178 Cal.Rptr. 801, 636 P.2d 1139] (*Hustedt*), arguably provide support for the Board's contempt determination. *Crawford* involved contempt against a psychiatric expert who refused to identify the employees who assisted him in preparing medical evaluation reports. A Board regulation required disclosure of participants in the examination and preparation of the report.

Rejecting the expert's attempt to thwart contempt proceedings, *Crawford* stated: "As to petitioner's assertion that rule 10606 is not an order subject to

contempt under Code of Civil Procedure section 1209, we note that rule 10606 is a rule of practice and procedure adopted pursuant to statutory authorization pertaining to the orderly conduct of proceedings before the WCAB; and inexcusable failure to comply with it constitutes unlawful interference with the proceedings of the WCAB within the meaning of section 1209. [Citations.]" (*Crawford, supra,* 213 Cal.App.3d at p. 169.)

"Nor is there merit to petitioner's further assertion that rule 10606 is insufficient to apprise one of the possibility of a contempt citation for violating its provisions. Although rule 10606 does not specify contempt as a sanction for noncompliance, WCAB rule 10562 (Cal. Code Regs., tit. 8, ch. 4.5, § 10562) regarding failure to appear at a hearing similarly does not specify contempt as a sanction; yet, failure to comply with rule 10562 can result in a contempt finding. [Citations.]" (*Crawford, supra,* 213 Cal.App.3d at p. 169.)

In *Hustedt,* the California Supreme Court barred disciplinary proceedings designed to prevent an attorney from practicing before the Board, but permitted the Board to proceed with contempt charges against the attorney. Hustedt, the attorney, had appeared through an associate on March 22, when the matter was adjourned to March 26 at 9 a.m. The associate did not object to adjournment, but the next day Hustedt called the WCJ and requested that the March 26 hearing be held in the afternoon. The WCJ refused to change the hearing time and warned Hustedt that if no one from his office appeared at 9 a.m., he would be held in contempt. No one from Hustedt's office appeared, but Hustedt's office sought to prevent the hearing from taking place by seeking to disqualify the WCJ for bias and prejudice.

The WCJ later recused himself and recommended to the Board that it hold contempt proceedings against Hustedt for failing to appear and for filing a disqualification petition containing contemptuous statements for purposes of delay. Hustedt then brought writ proceedings seeking to prevent the Board from hearing either the contempt action or the disciplinary proceeding. (*Hustedt, supra,* 30 Cal.3d at pp. 333-335.) After finding that the Board had no authority to suspend Hustedt's right to practice law before it, the *Hustedt* court addressed briefly the Board's contempt powers. Resolving the case against Hustedt, the court stated: "The amended order to show cause charges that petitioner filed the disqualification petition 'in bad faith and for the purpose of interfering with the proceedings' in the compensation case. [Citation.] As evidence of petitioner's bad faith and intentional interference with the progress of the compensation case, the order to show cause alleges that (1) petitioner was late in filing the petition for disqualification; (2) the petition contains statements which are untrue; and (3) petitioner failed to appear, or provide for an appearance by another." (*Id.* at p. 348.)

"Intentional interference with the proceedings of a court is a proper basis for holding an attorney in contempt. (Code Civ. Proc., § 1209, subds. 1, 8.) Further, an attorney may be held in contempt for failing to appear, without proper excuse, at a duly scheduled hearing. (E.g., *Rosenstock* v. *Municipal Court* (1976) 61 Cal.App.3d 1, 6-7 [132 Cal.Rptr. 59].)" (*Hustedt, supra,* 30 Cal.3d at p. 348.)

Both *Crawford* and *Hustedt* illustrate appellate court willingness to support the Board's efforts to retain firm control over the conduct of its proceedings. Without intending to diminish the Board's control, we question here whether the Board or its WCJ's may hold an attorney in contempt without evidence that the attorney either (1) was ordered to appear, (2) had agreed to appear or (3) knew or should have learned that appearances by attorneys were mandatory for the particular kind of hearing the attorney missed.

TIMEC directs our attention to no order requiring Runnion to attend the hearing and no agreement by Runnion to appear for the conference/hearing.[2] Notifying a party and/or attorney of the hearing date and time and advising them that continuances are disfavored and to arrive before the appearance time cannot be construed as an order requiring one, the other, or both to appear.

Board regulations specify various consequences for failing to appear for a conference or hearing. Title 8, California Code of Regulations, section 10561, states that "[f]ailure to appear or appearing late at a conference or hearing shall be deemed a bad faith action or tactic solely intended to cause unnecessary delay where a reasonable excuse is not offered or the offending party has demonstrated a pattern of such conduct" and authorizes sanctions under section 5813 for failure to appear.

Section 5813 addresses bad faith actions and tactics generally and authorizes sanctions not to exceed $2,500 in addition to attorney's fees and costs incurred because of bad faith actions or tactics. It does not mention contempt.

Section 10562 of the administrative regulations (Cal. Code Regs., tit. 8, § 10562) specifically addresses failure to appear in workers' compensation proceedings. It provides, in pertinent part: "Where a party served with notice

---

[2]In its supplemental brief, TIMEC mentions title 8, California Code of Regulations, section 10563, as authority for compelling attorneys to appear for settlement conferences. However, that section directs an *applicant* to attend "a conference hearing including a mandatory settlement conference" and does not mention the applicant's attorney.

of hearing fails to appear at such hearing either in person or by attorney or representative, the Workers' Compensation Appeals Board may dismiss the application . . . or the workers' compensation judge may hear the evidence and . . . make such decision as is just and proper. [¶] Where a party served with notice of a mandatory settlement conference fails to appear at such conference, the workers' compensation judge may dismiss the application . . . or . . . may close discovery and forward the case to the presiding workers' compensation judge to set for hearing. [¶] Where a party, after notice, fails to appear at either a hearing or a mandatory settlement conference and upon a showing of good cause for failure to appear, the worker's compensation judge may take the case off the calendar . . . or dismiss the application . . . or may continue the case to a date certain."

Title 8, California Code of Regulations, section 10562, does not mention contempt as a possible consequence for failing to appear. The Board may dismiss an application, the WCJ may proceed without a party or may take the case off calendar or continue the matter. Pursuant to section 10561 of the administrative regulations, upon a finding of bad faith, the WCJ or the Board may impose sanctions under section 5813, which may include attorney's fees, costs and an additional award not to exceed to $2,500.

The Board's regulations would cause any reasonable attorney confusion about an attorney's and a party's obligations to appear for conferences and hearings and about the consequences of missing a conference or a hearing. By specifying these various sanctions and by failing to mention contempt, the Board has cast serious doubt on its own authority to hold a party or an attorney in contempt for failing to appear when not directly ordered or agreeing to do so.

Although Runnion had an obligation to know the law and Board procedures, even researching the legality of a contempt finding for failing to appear at a workers' compensation conference/hearing would have left him uncertain. It is true that *Crawford, supra,* 213 Cal.App.3d at page 169, suggested that contempt may be an appropriate sanction for a failure to appear. However, the issue was not before the *Crawford* court, and *Crawford* supported its dicta with meager authority, relying only upon the fact that the Board had once held an attorney in contempt for failing to appear and citing commentary in a legal text referring only to that one incident.[3] *Hustedt's* dicta also were minimally supported. The *Hustedt* court cited only the single example of a criminal defense attorney held in contempt for failing to appear for a municipal court trial, a contempt finding which the appellate court set

---

[3] (Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 6.38, p. 217.)

aside for other reasons.[4] Neither *Crawford, Hustedt,* nor the criminal case cited by *Hustedt* would have clarified ambiguity about whether Runnion's attendance at the hearing was mandatory and whether his absence would be contemptuous.

If the Board wishes to use its substantial contempt power, it must meet the standards set by the Code of Civil Procedure. Contempt is a proper sanction only for willful misconduct. (See *In re Karpf* (1970) 10 Cal.App.3d 355, 372 [88 Cal.Rptr. 895].) Runnion engaged in no disorderly or insolent behavior toward the judge; he abused or unlawfully interfered with no process or proceeding; he disobeyed no tribunal or officer. Only if he willfully violated an order of the WCJ could his failure to appear constitute contempt under any of the provisions of Code of Civil Procedure section 1209. Lacking support from evidence that Runnion knew or recklessly avoided learning that, despite of the Board's more lenient regulations, his appearance was compulsory and his absence would be contemptuous, the contempt adjudication cannot stand.

TIMEC glosses over the distinction between contempt and other sanctions, citing section 5813 as authority for the WCJ's contempt order. TIMEC also justifies the order by noting that workers' compensation judges are reluctant to dismiss claims when attorneys fail to appear.

"In California all contempt proceedings are quasi-criminal in nature. [Citations.]" (*Morton* v. *Workers' Comp. Appeals Bd.* (1987) 193 Cal.App.3d 924, 927 [238 Cal.Rptr. 651].) Neither the WCJ nor the Board may gloss over the requirements for holding a litigant or attorney in contempt or may adjudicate contempt where the statutory conditions have not been met. The contempt order was beyond the Board's powers, given the evidence before it. (§ 5952, subd. (a).)

### The Contempt Order

As a separate ground for our decision, we must vacate the contempt order because the Board did not comply with well-established requirements for an order adjudicating contempt.

"It is the settled law of California that for pragmatic considerations in the administration of justice [citation], the failure of an attorney to appear without excusable cause at the appointed date and hour set for the commencement or resumption of judicial proceedings in which he is a counsel constitutes a direct contempt of court [citations] or a hybrid contempt that

[4]*Rosenstock* v. *Municipal Court* (1976) 61 Cal.App.3d 1 [132 Cal.Rptr. 59].

may be summarily treated as if it were a direct contempt in the court's presence [citation]." (*In re Karpf, supra,* 10 Cal.App.3d at p. 363, fn. omitted.)

In direct contempt, the court must file an order "reciting the facts constituting the contempt, adjudging the person guilty and prescribing the punishment." (10 Cal.App.3d at p. 364.) The reviewing court will annul a contempt finding when the contempt order does not meet these requirements. (*Mowrer v. Superior Court* (1969) 3 Cal.App.3d 223, 229 [83 Cal.Rptr. 125].)

█ Runnion correctly observes that the WCJ's contempt order did not meet the standards for contempt orders. Although the WCJ discussed in some detail the facts leading to the contempt finding and found that Runnion did not have a valid excuse for missing the hearing, the contempt order did not even identify which provision of Code of Civil Procedure section 1209, subdivision (a), Runnion violated. If, as implied by the WCJ's discussion, Runnion was held in contempt under subdivision (a)5, for violating an order to appear, the WCJ's contempt order improperly failed to identify the order directing him to appear, to state that Runnion knew he had been ordered to appear, and to determine that he willfully failed to comply with the order.

### *Sanctions[5]*

█ Although the WCJ lacked the authority to hold Runnion in contempt under the circumstances of this case, the WCJ could properly sanction him under section 5813. Runnion contends, however, that he did not act unreasonably when he elected not to appear. We conclude the WCJ was well within her powers to decide otherwise.

Runnion's initial statements about attending the hearing were that he had no intention of doing so and that TIMEC would have to depose Gore if it wanted information. His later excuse, that he thought civil court rules applied, was an incomplete explanation for his actions because, under the rules he cited, he should have contacted the WCJ in advance to advise her he did not intend to appear. The WCJ could properly sanction him for bad faith actions and for trifling with the workers' compensation proceedings.

Runnion cites no authority for his contention that sanctions must be in a specified amount, and we have found no such authority. The WCJ did not

---

[5]Runnion's due process and equal protection claims address only the contempt order, not sanctions. In light of our conclusion that the WCJ lacked authority for her contempt order, we need not address these constitutional claims. For the same reason, we also need not address Runnion's claim that improper notice was given of the facts constituting the contempt or his claim that personal service of the contempt charge was required.

abuse her discretion in requiring that Runnion pay the costs for a deposition and in retaining jurisdiction to settle any dispute over the amount of those costs.

Although Runnion cites section 4903, subdivision (a), in support of his claim that the WCJ erred in awarding fees to a nonattorney for attending an unproductive hearing, the authority he cites is not pertinent. Section 4903, subdivision (a), addresses liens filed by attorneys against their clients' awards, and it bars awarding fees for legal services to nonattorney representatives. That statute has no force here, where the fees were not assessed against the client's award, they are to be paid to an adversary as a sanction, and they are to compensate Evans for time wasted, not for legal services rendered.

Finally, in a throw-away paragraph, Runnion asserts, without explaining his assertion or citing any supporting authority, his opinion that sections 5309 and 5813 and title 8, California Code of Regulations, section 10348, are unconstitutionally vague and ambiguous and do not provide due process or guarantee equal protection. We need not respond to this ad hominem attack upon statutes and regulations routinely followed by the Board.

The Board's contempt award is annulled. The Board's sanctions are sustained. Each party is to bear his/its own costs in this proceeding.

Corrigan, J., and Parrilli, J., concurred.