[L. A. No. 28120.   In Bank.   Feb. 9, 1965.]

BRADFORD A. ARTHUR, Petitioner, v. THE SUPERIOR
COURT OF LOS ANGELES COUNTY, Respondent.

406

Bradford A. Arthur, in pro. per., and A. Brigham Rose for Petitioner.

Harold W. Kennedy, County Counsel, and Donald K. Byrne, Deputy County Counsel, for Respondent.

MOSK, J.—Bradford A. Arthur, an attorney at law, seeks a writ of certiorari to review an order of the respondent court holding him in contempt.

On the morning of April 17, 1964, Arthur had two matters pending before Judge Joseph Wapner in department 100 of the Superior Court of Los Angeles County (the criminal master calendar department), one matter pending in department 101, and a jury deliberating in a case in department 107. Prior to 9:15 a.m., Arthur notified the clerk in 101 that he had two matters in department 100, that he intended to be present and would return shortly. After completing one of his matters in 100, Arthur was notified by the clerk from 107 that the jury there had just returned. Thereupon Arthur left 100 for 107, even though he had the next case on the calendar in 100. When the next case was called, Arthur was not present to represent his client. Judge Wapner, upon being informed by his clerk that Arthur had just left the courtroom, sent his bailiff to bring him back. The bailiff found Arthur in the corridor and stated to him, ''The judge wants you back

in court now.'' Arthur replied that he had a jury returning in another court.

Up to this point no factual conflict exists, but the testimony reveals some doubt as to what Arthur did thereafter.

Two hearings were conducted by Judge Wapner before he made his contempt order final. At the first hearing, held later the same day as the incidents related above, Arthur stated he thought the bailiff who accosted him in the corridor was from 101, although he admitted that he did not go to 101 before going to 107. At Arthur's request the court held a further hearing a week later. At that time Arthur testified that he had gone to 101 and told the clerk that he had a jury returning in another court, before going to 107. The clerk in 101 testified that Arthur had been in that court twice during the morning, but was unable to recall enough details to otherwise corroborate Arthur's version of the events. Consistently, however, Arthur insisted that he thought the bailiff had been sent by the judge presiding in 101.

Judge Wapner was unconvinced by Arthur's testimony. He found that Arthur in fact knew that the bailiff was from his court, and that Arthur made no effort to comply with the order to return to 100. In so finding, Judge Wapner noted the inconsistent statements about Arthur's proceeding to 101 before going to 107, that Arthur had appeared frequently in his court, and that the bailiff had served in that courtroom for more than a year. The judge stated that Arthur had failed to appear with clients in the past and had a prior contempt conviction in that court for the same offense. Judge Wapner sentenced Arthur to two days in jail.

Two issues are presented in this case. The first is whether appropriate procedure was followed by the court below, and the second is whether sufficient evidence exists to support the finding of contempt.

■ Section 1211 of the Code of Civil Procedure establishes the procedure that is to be followed in adjudging persons in contempt of court. ■ Contempt committed in the immediate view and presence of the court, known as direct contempt, may be treated summarily. All that is required is that an order be made reciting the facts, adjudging the person guilty, and prescribing the punishment. ■ If, however, the contempt did not occur in the immediate view and presence of the court, it becomes indirect contempt and a more elaborate procedure must be followed in order to notify the person so charged and to allow him an opportunity to be heard.

■ In such cases an affidavit must be presented to the court stating the facts constituting the contempt, an order to show cause must be issued, and a hearing on the facts must be held by the judge. (Code Civ. Proc., §§ 1212-1217.)

Whether the failure of an attorney to appear in court when ordered is a direct or indirect contempt is not a new issue before this court, but it is nonetheless perplexing. It arose in *Chula* v. *Superior Court* (1962) 57 Cal.2d 199 [18 Cal.Rptr. 507, 368 P.2d 107], and *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755 [278 P.2d 681]. In both cases the court held that the contempt was direct, and in both cases a dissenting opinion was filed on this point. The majority opinions in both *Chula* and *Lyons* took the position that all the relevant facts constituting the contempt occurred when the attorney failed to appear, and that the burden of offering an appropriate excuse was on the attorney. (*Chula* v. *Superior Court, supra,* at pp. 203, 207; *Lyons* v. *Superior Court, supra,* at p. 760.)

In the *Chula* case, Chief Justice Gibson wrote a concurring opinion indicating that elements of both direct and indirect contempt were present and that the situation was a ''hybrid.'' He maintained that the statutory procedure for direct contempt was suitable as long as an appropriate hearing was held on the question of excuse and that the procedure for indirect contempt was not required to protect the rights of the accused. (*Chula* v. *Superior Court* (1962) *supra,* at p. 207.)

The dissenting opinion in *Chula* pointed out that an element of the offense is lack of an excuse and that therefore not all the events constituting the contempt occurred in the ''immediate view and presence of the court.'' No finding of contempt can be made until it is determined whether the actions of the absent person occurring outside the courtroom provided him with an excuse. (*Chula* v. *Superior Court* (1962) *supra,* 57 Cal.2d 199, 209 [dissenting opinion].) The dissent urged that summary procedures would violate due process requirements, that the only alternative is to follow the procedures for indirect contempt, and that ''Anything less than the protections afforded by these procedures would be inadequate.'' (*Chula* v. *Superior Court* (1962) *supra,* at p. 211.)

■ We conclude that the procedure outlined in sections 1211, 1212 and 1217 of the Code of Civil Procedure for indirect contempt contemplates a situation in which virtually none of the facts involved in the alleged contempt have occurred in the judge's presence but have arisen entirely outside the courtroom. ■ In such cases, due process requires

notice and hearing lest the alleged contemner be convicted ex parte. (See *In re Oliver* (1948) 333 U.S. 257, 273 [68 S.Ct. 499, 92 L.Ed. 682].) ■ Where counsel fails to appear, however, the offensive conduct, to wit, the absence, occurs in the presence of the court. Thus, when an absent attorney reappears in the courtroom, due process should be satisfied if the judge confronts him with the charge and offers him a reasonable opportunity to explain.

■ Elusive attorneys are a recurring problem in trial courts, particularly in calendar departments, a fact of which this court may take judicial notice. Three cases of this nature have reached this court in the past decade, and in each of those cases there was evidence of repeated offenses by the attorneys held in contempt. Insistence upon strict adherence to the procedure for indirect contempt would provide insulation to attorneys who now overextend themselves, and encourage them to go further in trying the patience of trial judges through absences which obstruct normal courtroom procedure but border upon being excusable.

■ Before an attorney may be held in contempt for an absence from the courtroom, he must be notified that he is being cited and given a reasonable opportunity to show why he should be excused. ■ In the absence of arbitrariness on the part of the sentencing judge, and with a showing that a reasonable opportunity was afforded the attorney to explain the reasons for his absence, this court should not annul contempt proceedings against attorneys who fail to appear in court when properly ordered to do so.

We now reach the question whether the court had sufficient cause to find this petitioner in contempt. ■ In a proceeding in certiorari to review an adjudication of contempt the question whether the acts constituted a contempt is jurisdictional, and in the absence of evidence showing contempt, the order of commitment should be annulled. (*Chula* v. *Superior Court* (1962) *supra*, 57 Cal.2d 199, 204-205; *Fortenbury* v. *Superior Court* (1940) 16 Cal.2d 405, 407-409 [106 P.2d 411]; cf. *In re Zerbe* (1964) 60 Cal.2d 666, 667-668 [36 Cal.Rptr. 286, 388 P.2d 182].) ■ The judgment and commitment order in this case stated that Arthur was absent when ordered to appear, that he knew he was required to appear, that he had the ability to appear, and that he wilfully neglected to appear. Thus, the responsibility of this court is merely to ascertain whether there was sufficient evidence before the trial court to sustain its judgment and order.

Evidence supporting the contempt shows that Judge Wapner sent his bailiff to get Arthur; that the bailiff told Arthur he was wanted back in court; that the bailiff had served in Judge Wapner's courtroom for over a year; that Arthur had appeared in that courtroom frequently during that period; and that Arthur had been found in contempt in the past for failing to appear. But none of these facts go to the question of excuse. If Arthur had a valid excuse for his absence, the above facts would not support a contempt conviction.

Arthur had two excuses for his absence. One was that he "thought the bailiff was from another court" and did not understand that he was to be in Judge Wapner's courtroom at that time. This explanation was not accepted by the court as being believable, and this court must accept that factual determination. (*Bridges* v. *Superior Court* (1939) 14 Cal.2d 464 [94 P.2d 983]; *White* v. *Superior Court* (1895) 110 Cal. 60 [42 P. 480].) Arthur's second excuse was his requirement to appear in another court at the same time he was ordered to appear in Judge Wapner's court. The commitment order stated Arthur had the ability to appear in department 100 when so ordered. But it may be urged that the notice from the clerk of department 107 that his jury had returned there was a court order to be present equivalent to Judge Wapner's order. Thus, petitioner's ability to return to Judge Wapner's courtroom would be conditioned upon his disobeying an order of another court. Arthur did inform the bailiff from 100 that he was unable to comply with the Wapner order, although he did not tell Judge Wapner personally. (It should be remembered, however, that Arthur has stoutly maintained he thought he was talking to the bailiff from 101.)

While courtesy would have dictated advising the judge personally, the contempt cannot rest upon petitioner's failure to personally apprise Judge Wapner of the reason for his absence. Such a rule would place an onerous burden upon attorneys who find themselves unable, for causes beyond their control, to make a court appearance. An attorney should notify a responsible officer of the court as soon as he realizes he will be unable to appear at the scheduled time. By failing to do so, an attorney assumes the risk that he may be in contempt if the reason for his absence is later deemed insufficient to constitute a valid excuse. But we cannot impose a rule requiring an attorney to seek out the judge personally under every circumstance where he finds it impossible to appear in court at the appointed hour.

In effect, we are asked to pass on the question whether an attorney who has an active trial practice is required to schedule his time in such a way that he will be able to appear in court at all times when required. Certainly, this problem encompasses a wide range of situations, including the personal habits of individuals for punctuality.

When an attorney fails to appear in court with his client, particularly in a criminal matter, the wheels of justice must temporarily grind to a halt. The client cannot be penalized, nor can the court proceed in the absence of counsel. Having allocated time for this case, the court is seldom able to substitute other matters. Thus, the entire administration of justice falters. Without judicious use of contempt power, courts will have little authority over indifferent attorneys who disrupt the judicial process through failure to appear. Nevertheless, to require attorneys always to be present when scheduled, without allowing any flexibility, would be unrealistic.

Few cases have dealt with the practical problem here presented, and thus we find no ready prescription. The usual approach is to accept the trial court's factual conclusion that the absence was unexcused. (E.g., *Chula* v. *Superior Court* (1962) *supra*, 57 Cal.2d 199.) One case has suggested that there can be no contempt when an attorney has two matters pending in different courts. (*Ex parte Butler* (Tex.Crim. App. 1963) 372 S.W.2d 686.)

In the case before us, we cannot find petitioner's conduct to have been excusable. While it may be true that he could not avoid the conflict, he did little to attempt to mitigate the effect of his absence from the proceedings before Judge Wapner. His client was left unrepresented and the court lost precious time that vanished forever. Petitioner's conversation in the hall with the bailiff did not suffice to meet a reasonable requirement that he notify the court of his absence for, in fact, he thought he was advising the bailiff from 101. The facts establish that petitioner arrived at the courthouse the morning in question burdened with a caseload that any prudent practitioner would realize rendered it impossible for him to conclude the day without a delay in some of the matters he was handling. He had made no reasonable effort to prevent the inevitability of conflict and delay. When he departed from Judge Wapner's courtroom he did so in a callously indifferent manner without notifying the court or his client that he would be absent. Under these circumstances

punishment for being contemptuous of the judicial process is not inappropriate.

The order of contempt is affirmed.

McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

TRAYNOR, C. J., concurring.—I agree that the evidence is sufficient to support the order holding petitioner in contempt of court. I adhere, however, to the views set forth in my dissenting opinion in *Chula* v. *Superior Court,* 57 Cal.2d 199, 208 [18 Cal.Rptr. 507, 368 P.2d 107], that sections 1211 and 1217 of the Code of Civil Procedure prescribe the procedure for adjudicating contempts of court and that under those provisions an unexcused absence must be treated as an indirect contempt. Since that case and *Lyons* v. *Superior Court,* 43 Cal.2d 755 [278 P.2d 681], establish that the code provisions do not preclude this court from adopting a different procedure for determining when an absence is unexcused and therefore a contempt of court, I concur in the judgment under the compulsion of those cases.

Tobriner, J., concurred.