[Crim. No. 2062. Fifth Dist. Jan. 14, 1975.]

In re MIKE A. KARAGOZIAN on Habeas Corpus.

**COUNSEL**

Arthur G. Lawrence and Theodore A. Cohen for Petitioner.

Robert M. Wash, County Counsel, Max E. Robinson, Assistant County Counsel, and Charles E. Moore, Deputy County Counsel, for Respondent.

**GARGANO, J.**—Petitioner, a deputy public defender in the office of the Public Defender of Fresno County, was assigned to defend Calvin Riggs in a criminal trial which commenced in the Superior Court of Fresno County on May 30, 1974, Judge Blaine Pettitt presiding; petitioner instituted this proceeding to challenge the validity of a civil contempt order holding him in contempt of court for his obstreperous and contumacious behavior during the course of that trial. The order, entered on June 12, 1974, specified 11 separate acts and, in pertinent part, read as follows:

"1. Repeatedly asking questions and making long statements to members of the jury panel on voir dire which were argumentative and designed to indoctrinate the jury. This was after objections had been sustained to such questions and statements and said counsel had been admonished by the court concerning such tactics.

"2. Engaging in argumentative and time-wasting conduct on jury voir dire examination which so annoyed members of the jury panel that the panel member in seat 12, who was finally reached on the second day of voir dire, stated that after observing defense counsel's conduct the previous day she could not possibly be an unbiased juror.

"3. Engaging in repeated arguments with the court after objections to his questions during trial had been sustained.

"4. Repeatedly asking the same argumentative and otherwise objectionable questions to which objections had been sustained.

"5. Falsely charging the court with having made accusations against him.

"6. Falsely charging that the court was acting in concert with the deputy district attorney as prosecutor in said trial.

"7. Refusing to stop talking so a witness could finish an answer to a question which as a result forced the court to order said attorney to be seated and stop talking.

"8. Repeatedly grimacing and jerking his body about in the presence of the jury as negative reactions to the court's rulings.

"9. Audibly snickering and shaking his head from side to side in the presence of the jury, while standing within one or two feet of the jury box, after the court had asked if he was making marks with his pen on one of the exhibits in evidence.

"10. Directly defying the court in the presence of the jury on the fourth day of trial by shouting he would not stop talking when the court was again ordering him to do so while a witness on cross-examination was attempting to answer one of said attorney's questions. The court had warned said counsel of contempt on the previous day of trial.

"11. Smiling in obvious pleasure while the court, after three-and-one-half days of continuous abuse, was reciting some of his contumacious conduct before finding him in contempt."

The pertinent facts are undisputed.

On the second day of the criminal trial, the trial judge interrupted petitioner's *voir dire* of a prospective juror, stating that the court had covered the subject and that petitioner was not to ask that question again. The judge explained, "We have gone through this process now for going on about seven hours, and I am exercising the prerogative of the Court, as I have informed you earlier, to control the voir dire process."

A few moments later, the judge excused the prospective jurors, and petitioner made a motion to dismiss the entire panel; he stated that the judge's remarks, when added to what already had occurred, had prejudiced the prospective jurors against his client. The judge pressed petitioner for an explanation, and the latter stated that he was referring to the judge's statement that petitioner's *voir dire* was improper and argumentative. The judge asked petitioner if he had "tried a Superior Court case before," and petitioner replied, "I will take exception to that." Petitioner moved to disqualify the judge on the ground that he was prejudiced, and the motion was denied. Petitioner then said, "There is no way for Mr. Riggs to get due process in this court." Judge Pettitt answered, ". . . I have never run into anybody . . . who has conducted himself like you . . . ." Petitioner attempted to reply, but the judge admonished him to "be quiet." The judge added: "I am going to hold you in contempt and I won't hesitate a minute to do so. You be quiet and quit accusing the Court of having done one thing or another. You have your right of appeal and you can exercise it any time you want to."

On the fourth day of the trial, Judge Pettitt interrupted petitioner's cross-examination of a prosecution witness and told the witness to finish his answer. Petitioner began to speak, and the judge asked him to "be quiet." Petitioner retorted, "I'm not going to be quiet. I want to make a motion at this time."

After excusing the jurors, the judge stated: "[A] moment ago when I asked about whether you were marking that print, and you were standing between the witness stand and the jury, you began to snicker, and I could hear it here, and all the jurors heard it, and I saw the expressions on their faces.

"Just now, I ordered you to be quiet and let this witness answer, and you said you weren't going to be quiet.

"Yesterday, I had caused you to be seated and told you not to say anything more while a witness was answering a question.

"Several days ago, last week—and you were smiling about all that." Petitioner replied, "I am smiling, your Honor," and the judge answered, "You may not smile when I am finished." Judge Pettitt added: "Last week, I told you I was going to hold you in contempt if you didn't behave yourself.

"Now, I think your conduct has been disgraceful, and I think it's contemptuous. You are interfering with the administration of this Court's business; you are unneccessarily [*sic*] delaying the proceedings; you are being disrespectful, and for that, I find you in contempt of court.

"The matter of punishment i[s] reserved to the end of the trial."

On the last day of the trial, after the jury had retired to deliberate on a verdict, the judge noted for the record that petitioner was present with the deputy district attorney and Mr. Melvin Nitz, the public defender. Then the judge stated: "Mr. Karagozian, you were found in contempt on one occasion yesterday. In the opinion of the Court, you should have been found in contempt on several occasions, such as several occasions when you impugned the Court's integrity, particularly in front of the jury, by citing the Court for judicial misconduct, in a very truculent manner, charging that there were two prosecutors in this case, and the Court was one of them; shouting, and that was usually the case, shouting that the Court had made accusations against you, and when the Court

asked you what the accusations were, you just went on a tirade into some other area. There wasn't anything to say.

"There were many more instances. At the time the Court was talking to you, and either about to hold you in contempt or had just done so, I think it was before, it was before, I know, you were standing there laughing and I called that to your attention, and you agreed that you were. You thought it was funny.

"I tried to be patient throughout this trial and I had warned you that I would hold you in contempt. I once had to, before you were held in contempt, had to order you to sit down and stop talking. I believe, in this case, it was when a witness was attempting to answer a question.

"Finally, after almost four days of conduct that I consider very disgraceful conduct, disrespectful, crude, as crude as I have ever seen in a courtroom, you were in the process of refusing to let a witness answer a question that you had asked. When I attempted several times, when this very same thing had happened on numerous occasions previously, and we had trouble about that along with many other things, when I was attempting to see to it that the witness got a chance to answer the question, you then shouted to the Court that you weren't going to be quiet, when I ordered you to be.

"This, of course, was in the immediate presence and view of the Court, and I am going to attach the exchange that took place between us, to the formal contempt order that I am going to prepare. At that time, I then found you in contempt and I deferred sentencing until the end of the trial. When we recessed at noon today, after the jury had been instructed, I ordered you to return here at 1:30, and this is now that time.

"I want to say this: I am firmly convinced, after observing you for the time that I have, that you are not going to learn proper courtroom conduct if you are simply dealt with very lightly. It's also the opinion of the Court that your prolonged and continuous conduct warrants a stiff penalty, and I therefore—will you stand up, please.

"As punishment for the contempt that the Court has found you to be in, I sentence you to four days in jail, plus a fine of $250, and if the fine is not paid by 9:00 a.m. on June the 11th, you will report to the jail to serve one more day in jail, in lieu of the fine.

"Now, the execution of the jail sentence is suspended until the jury returns a verdict in the case that we have just tried. The jury is now deliberating. Until they return a verdict or until they are otherwise discharged or in case we have a mistrial.

"That's all I have to say."

■ Petitioner was not accorded the minimum requirements of due process of law in this case. Petitioner was held in contempt of court on the basis of 11 separate acts of contemptuous conduct, but the trial judge did not treat each act as a discrete and separate matter nor did he hold petitioner in contempt as the act occurred and sentence him at that time. (*Hawk v. Superior Court,* 42 Cal.App.3d 108, 131 [116 Cal.Rptr. 713].) On the contrary, the judge treated the 11 acts as a single continuous offense, and at the end of the trial held petitioner in contempt for the single offense.[1] Moreover, while the judge deferred the final adjudication and imposition of sentence until the last day of the trial, he did not give petitioner prior notice of the precise charges nor did he describe with particularity the 11 acts on which the adjudication ultimately was predicated; he merely told petitioner, in essence, that he was holding him in contempt for "disgraceful," "disrespectful" and "crude" conduct and then promptly proceeded to impose sentence; the judge waited six days after the final adjudication before entering the order which, for the first time, delineated with specificity the acts upon which the contempt judgment was based. Clearly, petitioner was not given adequate notice or a hearing or the opportunity to speak in his own behalf before he was sentenced. (Pen. Code, § 1200.)

The recent decision of *Taylor* v. *Hayes,* 418 U.S. 488 [41 L.Ed.2d 897, 94 S.Ct. 2697], is dispositive of the issues presented in this proceeding. In that case, the contemnor was a lawyer, the contemptuous conduct upon which the adjudication of contempt was based occurred during the course of a criminal trial, and the trial judge deferred final adjudication and imposition of sentence until after the trial was completed. However, in *Taylor,* the judge treated each act of contempt as a discrete and separate matter, and when he considered the contemnor to be in contempt, he informed him of that fact and in most instances gave the contemnor the opportunity to respond to the charge at that time. Nevertheless, the United States Supreme Court held that the judge's

---

[1]On one occasion, the judge declared petitioner to be in contempt of court. However, he deferred sentence until the end of the trial and then included the act for which he had held petitioner in contempt among the 11 separate acts he mentioned in the final order.

failure to give the contemnor notice of the charges, a hearing and an opportunity to speak on his own behalf before the rendering of the final adjudication and the imposition of sentence, was in contradiction of procedural safeguards guaranteed by the due process clause of the United States Constitution.

Respondent argues that the *Taylor* case is to be distinguished from the case at bench because in *Taylor* the final adjudication of contempt and the imposition of sentence took place after the criminal trial had ended; respondent points out that here the final adjudication of contempt and the imposition of sentence occurred before the jury returned a verdict and when the criminal trial was still in progress.

The distinction respondent would have us draw is unrealistic; it ignores the delicate foundation upon which the power of a trial judge to punish summarily for contemptuous behavior during the course of a trial is based. ■ The power of the judge to punish an obstreperous lawyer during the course of a criminal trial without notice or hearing finds constitutional justification in the absolute need of the judge to maintain control over the courtroom to prevent an "actual obstruction of justice." (*Codispoti* v. *Pennsylvania,* 418 U.S. 506, 513 [41 L.Ed.2d 912, 920. 94 S.Ct. 2687, 2692]; *Hawk* v. *Superior Court, supra,* 42 Cal.App.3d 108, 131-132.) The lesson to be learned from the *Taylor* opinion is that where final and decisive action is deferred until after the trial is concluded, the adjudication of contempt and sentencing without notice or hearing or the opportunity to speak in one's own behalf does not "square with the Due Process Clause of the Fourteenth Amendment" because the urgency has ceased and the need to punish summarily to maintain order in the courtroom no longer exists. (*Taylor* v. *Hayes, supra,* 418 U.S. 488, 497-498 [41 L.Ed.2d 897, 907, 94 S.Ct. 2697, 2702-2703]; see *Codispoti* v. *Pennsylvania,'supra,* 418 U.S. 506, 515 [41 L.Ed.2d 912, 921, 94 S.Ct. 2687, 2692].) It seems clear to us that under this reasoning the constitutional mandate prohibiting summary punishment except under extreme circumstances is equally applicable to a situation such as this where the final adjudication of contempt and sentencing was deferred to the last day of the trial and to a time when the need to punish summarily had ceased. As the high court explained in *Taylor,* ". . . where conviction and punishment are delayed, 'it is much more difficult to argue that action without notice or hearing of any kind is necessary to preserve order and enable [the court] to proceed with its business.' " (*Supra,* 418 U.S. at p. 498 [41 L.Ed.2d at p. 907, 94 S.Ct. at p. 2703].)

The record is incomplete, and we do not pass on the question as to whether the evidence is sufficient to support a finding that petitioner was in contempt. However, the record we do have shows that on several occasions petitioner was very obnoxious and that the trial judge's patience must have been taxed, sorely, during the trial. To safeguard the integrity of the judicial process, the cause should be retried by another judge. (See *Tumey* v. *Ohio,* 273 U.S. 510, 532 [71 L.Ed. 749, 758, 47 S.Ct. 437, 444, 50 A.L.R. 1243].)

The order adjudging petitioner in contempt is annulled, and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

Brown (G.A.), P. J., and Franson, J., concurred.