[Civ. No. 48407. Second Dist., Div. One. June 29, 1976.]

ALVIN NIERENBERG, as Deputy Public Defender, etc.,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, John H. Moore, Chief Deputy Public Defender, and Harold E. Shabo, Deputy Public Defender, for Petitioner.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, for Respondent.

**OPINION**

LILLIE, J.—Petitioner, a deputy public defender, represented Jimmy Ray Harris, defendant in the trial of a criminal prosecution for violation of sections 459, 261.3 and 288a, Penal Code, before a commissioner sitting as judge pro tempore with a jury, commencing in March 1976. At the close of the People's case, and on March 26, the district attorney moved to discover certain material gathered by the defense in preparation for trial; the motion was granted and petitioner was ordered to turn over to the district attorney any statement made to the defense investigator by the victim, and any statements made to the investigator by defense witnesses but only if the witness is called to testify, and if the defense is unwilling to produce the statement, the witness will not be permitted to testify. On March 29 petitioner refused to comply with the court's order and was cited for contempt, the hearing to be had "at the conclusion of the case here [Harris trial] when the jury is discharged."

On March 30, after the defense called the victim to testify, the district attorney asked her on cross-examination if she had been interviewed by the defense investigator, and she answered in the affirmative. Subsequently petitioner moved to strike the testimony concerning the interview; a colloquy ensued; petitioner again sought to argue the motion before the jury; the court asked, "Do you want to be held in contempt?" and petitioner replied, "my client is being denied a fair trial—" whereupon the court said "I'm citing you now for contempt," to be heard "at the end of the proceedings in this [Harris] case."

On April 2 the jury acquitted defendant Harris. After the verdict was returned and the jury polled and discharged and defendant Harris was ordered released, the commissioner announced "We will proceed now with the matter of the contempt." Petitioner requested a continuance on the ground he was "entitled to at least three days under the laws and statute," his "appellate department would like to review the proceedings" and he had only one "copy of the contempt," and he had not received the reporter's transcript. The commissioner continued petitioner's contempt hearing to April 7.

On April 7 at the very outset of the contempt hearing petitioner and his counsel expressly refused to stipulate that the commissioner could serve as a judge pro tempore or that the commissioner had the power to act as a judge at the hearing.[1] However, the commissioner presided over the contempt hearing without a stipulation, and after hearing argument of counsel, purged the contempt relating to the statements of defense witnesses. For petitioner's refusal to disclose the statement of the victim, the commissioner adjudged him in contempt of court and ordered him to pay a fine of $50, and for petitioner's argument on the motion to strike the commissioner adjudged him in contempt of court and ordered him to pay a fine of $100.

On April 8, 1976, petitioner filed the within petition for writ of certiorari, whereupon this court ordered (1) a temporary stay of execution of the April 7 order pending determination of the petition, and (2) respondent court to show cause why the writ should not issue. Thereafter return and answer to order to show cause were filed by respondent court and the matter was orally argued. At the conclusion of oral argument counsel stipulated that in the event the writ issued, further hearing thereon is waived and the cause is submitted on all documents, papers and official records of respondent court including reporter's transcripts of all proceedings, on file herein. Writ of certiorari has issued and we have reviewed the records of respondent court in connection with the order of contempt.

■ In reviewing an adjudication of contempt, the sole question before this court is one of jurisdiction of the trial court to render the

---

[1]Petitioner's counsel stated to the court: "Mr. Nierenberg and I do not stipulate to Your Honor hearing this matter as a contempt hearing under California law, as we understand that the court commissioners as subordinate officers of the court are not entitled to proceed against persons for contempt." Subsequently counsel again stated: "May the record reflect that we do not stipulate to Your Honor hearing this matter."

judgment under review. (*In re Buckley*, 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].) Initially there is a serious jurisdictional question herein arising out of the power of the commissioner to adjudicate the contempt. While it is our view that the April 7 order of contempt is subject to challenge on other jurisdictional grounds, our disposition of the issue of the power of the commissioner to act in the matter herein compels our conclusion that said order is null and void.

The position advanced by respondent court in support of the order is that the commissioner acting as a judge pro tempore acts "for the superior court," and that in addition to inherent power the court has statutory power to summarily punish for direct contempt and control courtroom conduct of an attorney; that a direct contempt proceeding continued to the end of a trial is not a separate cause but an ancillary proceeding such as the hearing on motion to vacate order granting motion for new trial in *Anderson* v. *Bledsoe*, 139 Cal.App. 650 [34 P.2d 760]; and that petitioner's acquiescence in the court's order that the contempt be heard at the conclusion of the criminal trial either constituted the deferment a continuation of the Harris criminal proceeding or created an "implied or express stipulation" to the "delayed hearing."

Here the issue is a narrow one; it does not involve the power of the commissioner acting as a temporary judge to *cite* for contempt an attorney appearing before him in the underlying proceeding or even the power of the temporary judge at that time or at the conclusion of the proceeding but before final determination thereof, to *adjudicate* the contempt and punish the contemner. ■ Our concern is solely whether the commissioner has the power to adjudicate and punish for direct contempt after final determination of the underlying proceeding absent a stipulation conferring on him judicial powers. We conclude in this case that the acquittal of defendant Harris, discharge of the jury and order releasing Harris from custody marked the "final determination" of that "cause" in which "the parties litigant" had stipulated to empower the commissioner to act as a judge pro tempore; and that after final determination of Harris, the stipulation no longer was effective to confer judicial power on the commissioner to adjudicate the contempt, then a cause distinct from the underlying criminal proceeding and one which required a stipulation of "the parties litigant" thereto to vest the commissioner with the power to act as a temporary judge, which stipulation was expressly refused by petitioner.

The power of a court commissioner to act as a temporary judge emanates solely from stipulation by the parties to the proceeding. (Cal. Const., art. VI, § 21; *Rooney* v. *Vermont Investment Corp.,* 10 Cal.3d 351, 360 [110 Cal.Rptr. 353, 515 P.2d 297]; *People* v. *Tijerina,* 1 Cal.3d 41, 48-49 [81 Cal.Rptr. 264, 459 P.2d 680].) Section 21, article VI provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." Section 259a, subdivision 4, Code of Civil Procedure gives certain commissioners the power to "act as judge pro tempore when otherwise qualified so to act...." This statute does not enlarge the power granted in the Constitution. (*Rooney* v. *Vermont Investment Corp.,* 10 Cal.3d 351 [110 Cal.Rptr. 353, 515 P.2d 297].)

This case involves a direct contempt. ■ Direct contempt is that committed in the immediate view and presence of the court or of the judge at chambers; all other contempts are indirect which by definition occur outside the presence of the court. (§ 1211, Code Civ. Proc.; *In re McKinney,* 70 Cal.2d 8, 10, fn. 2 [73 Cal.Rptr. 580, 447 P.2d 972]; *Arthur* v. *Superior Court,* 62 Cal.2d 404, 407 [42 Cal.Rptr. 441, 398 P.2d 777]; *The People* v. *Turner,* 1 Cal. 152, 155.) It has been long established that a court has inherent power to punish for contempt. (*In re Buckley,* 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248]; *In re Shortridge,* 99 Cal. 526, 532 [34 P. 227].) While this power exists independent of statute (*Raskin* v. *Superior Court,* 138 Cal.App. 668, 669-670 [33 P.2d 35]), it has been codified by the Legislature which established the procedure to be followed in adjudging persons in contempt of court. (§ 1211, Code Civ. Proc.; *Arthur* v. *Superior Court,* 62 Cal.2d 404, 407 [42 Cal.Rptr. 441, 398 P.2d 777].) ■ The fact that the court has summary power to adjudicate a direct contempt (§ 1211, Code Civ. Proc.; *In re Hallinan,* 71 Cal.2d 1179, 1180 [81 Cal.Rptr. 1, 459 P.2d 255]) and all that is required is that an order be made reciting the facts adjudging the person guilty and prescribing the punishment (*In re Ciraolo,* 70 Cal.2d 389, 393-394 [74 Cal.Rptr. 865, 450 P.2d 241]; *Arthur* v. *Superior Court,* 62 Cal.2d 404, 407 [42 Cal.Rptr. 441, 398 P.2d 777]), does not establish that a direct contempt is not a distinct cause before the court. However, it has become a common practice to defer adjudication of contempt for courtroom misconduct to later in or at the conclusion of the trial " 'unless prompt punishment is imperative.' " (*In re Grossman,* 24 Cal.App.3d 624, 628-629 [101 Cal.Rptr. 176]; *People* v. *Fusaro,* 18 Cal.App.3d 877, 888 [96 Cal.Rptr. 368].) In those cases in which the

"final and decisive action is deferred until after the trial is concluded, the adjudication of contempt and sentencing without notice or hearing or the opportunity to speak in one's own behalf does not 'square with the Due Process Clause of the Fourteenth Amendment' because the urgency has ceased and the need to punish summarily to maintain order in the courtroom no longer exists. (*Taylor* v. *Hayes, supra,* 418 U.S. 488, 497-498 [41 L.Ed.2d 897, 907, 94 S.Ct. 2697, 2702-2703]; see *Codispoti* v. *Pennsylvania, supra,* 418 U.S. 506, 515 [41 L.Ed.2d 912, 921, 94 S.Ct. 2687, 2692].)" (*In re Karagozian,* 44 Cal.App.3d 516, 523 [118 Cal.Rptr. 793].)

Thus there appears to be need of some kind of hearing in a direct contempt when adjudication is made after the final determination of the underlying proceeding. While it is settled that the court retains jurisdiction to act in a direct contempt if the adjudication is made within a reasonable time after trial (*In re Foote,* 76 Cal. 543, 544 [18 P. 678]), the question confronting us is whether in the context of the commissioner's power to act as a judge pro tempore in the original cause the contempt proceeding is included in the stipulation empowering the commissioner to act as a temporary judge. We say that it is not, because the contempt cause is distinct from the underlying principal case.

First, "the parties litigant" in the Harris prosecution were the People and defendant Harris, and at the outset of the trial the district attorney and the petitioner representing them entered into the stipulation that the commissioner could act therein as a temporary judge. Second, "cause" as used in section 21, article VI is defined as "the proceeding before the court." (*Sarracino* v. *Superior Court,* 13 Cal.3d 1, 10 [118 Cal.Rptr. 21, 529 P.2d 53].) Thus the proceeding before the court in which the stipulation was entered into was the criminal prosecution of defendant Harris. Third, the contempt adjudication was a cause distinct from the underlying proceeding. This is reflected in the very nature of the direct contempt. "The parties litigant" are the petitioner and the court. No appeal lies from the contempt judgment. Had Harris been convicted and appealed from the judgment the cause reviewable by this court would not include the contempt proceeding against petitioner. (See *Sarracino* v. *Superior Court,* 13 Cal.3d 1, 9-10 [118 Cal.Rptr. 21, 529 P.2d 53].) It is only by extraordinary writ—certiorari or habeas corpus (*In re Buckley,* 10 Cal.3d 237, 259 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248]) or prohibition (*Ketscher* v. *Superior Court,* 9 Cal.App.3d 601, 604 [88 Cal.Rptr. 357]—that a contempt judgment may be reviewed.

Regardless of the outcome of the principal action or proceeding, the contempt citation still exists for disposition. The contempt is heard and determined upon a record of its own. Any adjudication is a separate judgment independent of the final judgment in the underlying proceeding. (Cf. *Sarracino* v. *Superior Court,* 13 Cal.3d 1, 9 [118 Cal.Rptr. 21, 529 P.2d 53].) A contempt is criminal in nature. (*Raiden* v. *Superior Court,* 34 Cal.2d 83, 86 [206 P.2d 1081].) Finally, the contempt adjudication was made after final determination of the underlying proceeding and was physically separated from the Harris case in time, place and context.

Although the contempt proceeding here was ancillary to the underlying criminal prosecution it was a cause distinct from the principal case. (*Sarracino* v. *Superior Court,* 13 Cal.3d 1, 9-10 [118 Cal.Rptr. 21, 529 P.2d 53]; *In re Plotkin,* 54 Cal.App.3d 1014, 1016-1017 [127 Cal.Rptr. 190].) In *Sarracino* the court held that the commissioner's power as a temporary judge to render temporary support orders against petitioner did, not include the power to hold him in contempt for noncompliance with those orders. Although *Sarracino* and *Plotkin* involve indirect contempt we think the direct contempt proceeding in the context of the circumstances of this case is no less a cause distinct from the Harris proceeding particularly in light of the fact that it was deferred by the court until after the final determination of Harris requiring a proceeding which includes "notice or hearing or the opportunity to speak." (*Taylor* v. *Hayes,* 418 U.S. 488, 497-498 [41 L.Ed.2d 897, 907, 94 S.Ct. 2697]; *In re Karagozian,* 44 Cal.App.3d 516, 523 [118 Cal.Rptr. 793].)

The contempt, a cause distinct from the underlying principal case, was heard after the final determination of that case at which time the power of the commissioner to act as a temporary judge under the stipulation therein had terminated thus a new stipulation was required before the commissioner could act as a judge pro tempore in the contempt proceeding, the "cause" then before the court. "The appointment of a temporary judge to hear a particular 'cause' carries with it the power to act until the final determination *of that proceeding.* (*Anderson* v. *Bledsoe* (1934) 139 Cal.App. 650 [34 P.2d 760] (temporary judge who tried case was thereby empowered to rule on motion to vacate his order granting new trial).) Such appointment does not, however, authorize the temporary judge to act in distinct proceedings, albeit ancillary to the same principal action, without being appointed and qualified for that purpose." (*Sarracino* v. *Superior Court,* 13 Cal.3d 1, 10 [118 Cal.Rptr. 21, 529 P.2d 53].)

At the outset of the contempt proceeding on April 7, five days after final determination of the Harris case, petitioner and his counsel expressly refused to stipulate that the commissioner could hear the contempt as a judge pro tempore interposing objection thereto. In the absence of an express or implied stipulation the commissioner's act in adjudging petitioner guilty of contempt is null and void. (Cal. Const., art. VI, § 21; *In re Plotkin,* 54 Cal.App.3d 1014, 1016-1017 [127 Cal.Rptr. 190].) It is clear from the record that not only was there no express stipulation that the commissioner could act as a temporary judge in the contempt proceeding, but there is no support for any finding of an implied stipulation. After final determination of the Harris trial when the contempt was called by the commissioner, petitioner requested a three-day continuance which was granted. We do not equate petitioner's request for a continuance with an implied stipulation that the commissioner could act as a temporary judge. Nor do we equate petitioner's acquiescence in the order deferring the adjudication of the contempt to the conclusion of the trial with an "implied stipulation," as urged by respondent court, because there was really no alternative in light of the presence of the jury, the length of the trial, the complications involved in petitioner's failure to disclose the statements of his witnesses and possible prejudice to the rights of Harris had the adjudication been made on the spot each time petitioner was cited for contempt; moreover, as recognized by respondent court, deferment to the end of the trial is "virtually uniform practice." Certainly consent via the rule of *Estate of Soforenko,* 260 Cal.App.2d 765 [67 Cal.Rptr. 563] as extended in *People v. Oaxaca,* 39 Cal.App.3d 153 [114 Cal.Rptr. 178], does not here exist. In *Estate of Soforenko* the court construed "all this deportment on the part of appellant's attorney [the parties participated at length in the proceedings without objection to the commissioner's right to hear the matter] as tantamount to a stipulation that the matter could be heard by the commissioner" (260 Cal.App.2d at p. 766). The court in *People v. Oaxaca,* 39 Cal.App.3d applied the *Soforenko* rule to a set of facts in which defendant was represented by an attorney, participated in a plea bargain, knowingly accepted the results of the sentence and interposed no objection to the commissioner's authority during the entire proceedings, and based thereon found an implied stipulation (39 Cal.App.3d at p. 165). In light of petitioner's express refusal to stipulate and objection to the power of the commissioner to hear the contempt cause exercised at the very outset of the proceeding, the acquiescence of petitioner to defer adjudication and the mere request for continuance fall far short of facts that show a consent to or willing participation in the proceedings.

Finally, we distinguish between the power of a temporary judge to *cite* an attorney for contempt for acts occurring during the course of the proceedings in which he is qualified to act, and the power to *adjudicate* the contempt after the final determination of the underlying cause. Without question a temporary judge can cite an attorney for contempt. If the adjudication thereof is deferred to after final determination of the underlying proceeding, available to the commissioner (if the parties litigant refuse to stipulate he can hear the matter) is the established procedure for indirect contempt.

We conclude that the commissioner did not have the authority to act on April 7, 1976, and that the order of contempt then made is null and void. The order adjudging petitioner in contempt and ordering him to pay total fines of $150 is annulled.

Wood, P. J., and Hanson, J., concurred.