[Civ. No. 47826. Second Dist., Div. One. Aug. 16, 1976.]

DONALD ROSENSTOCK, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY et al., Defendants and
Appellants.

**COUNSEL**

John H. Larson, County Counsel, and Eric R. Young, Deputy County Counsel, for Defendants and Appellants.

Donald Rosenstock, in pro. per., for Plaintiff and Respondent.

## OPINION

HANSON, J.—The Superior Court of Los Angeles County, on petition by Attorney Donald Rosenstock, issued a writ of prohibition ordering the Municipal Court of the Los Angeles Judicial District (hereinafter municipal court) to vacate its order to show cause in re contempt. The municipal court and its Commissioner Robert L. Swasey, who issued the order to show cause, have appealed.

### THE CASE

On March 20, 1975, criminal proceedings against defendant·James Ballou were set for trial in division 66 of the municipal court. Commissioner Swasey was presiding by appointment of the presiding judge; counsel for defendant Ballou in the pending matter was Donald Rosenstock. The matter was called in the morning and the prosecution was ready but neither the defendant nor his counsel were present. Defendant Ballou appeared in court at 2:30 p.m. but no further proceedings could be held because Rosenstock had not arrived. Commissioner Swasey ordered Rosenstock to appear the following day, issued an order to show cause in re contempt and imposed a fine.

In his affidavit Commissioner Swasey alleges in substance as follows: That defendant Ballou did not answer the 9 a.m. calendar call; that the court was advised by its clerks that Rosenstock called at 10:40 a.m. and requested that the case trail until the 1:30 p.m. calendar; that the defendant was present at 2:30 p.m. but Rosenstock had not appeared by then; that no communication had been received from Rosenstock and defendant Ballou did not know his whereabouts; that the commissioner thereupon ordered a bench warrant issued for Rosenstock, set bail at $2,500, and ordered the warrant held until 9 a.m. the next day. The commissioner further alleges that at approximately 3:05 p.m. Rosenstock called and advised the clerk that he was in division 38 on a felony preliminary hearing; that Judge Natoli of that division advised the commissioner that the felony preliminary would be concluded by the end of business hours; that the Ballou case was trailed to 9 a.m. the next day (March 21, 1975) and defendant Ballou was ordered to return at that time. The commissioner finally alleged that Rosenstock was in wilful violation of his duty to his client and unlawfully interfered with the process of the court.

The record discloses that when Rosenstock appeared before the commissioner the next morning he was told that he was in contempt and

ordered to return at 2 p.m. When he returned he was served with an order to show cause in re contempt with supporting affidavit. Rosenstock was taken into custody but was released when he posted bail. Appellants' brief states that no hearing was ever conducted on the contempt charge.

Attorney Rosenstock promptly petitioned the superior court for a writ of prohibition. In his affidavit Rosenstock alleged that at the time set for trial of the Ballou matter he was engaged in a felony preliminary hearing in division 38 of the municipal court; that his secretary advised the clerk in division 66 that he was so engaged and the clerk indicated to her that defendant Ballou had not answered the first call; that Rosenstock called Ballou's home and received no answer; that he checked later with his office and directed his secretary to check to see if defendant Ballou arrived in court; that he contacted Edward Galindo and Vivian Loupe, clerks in division 66, advising them of his preliminary hearing engagement; that at 11:30 a.m. he agreed with Vivian Loupe that a bench warrant should issue for defendant Ballou; that he knew defendant Ballou had failed to appear for a previous hearing set in that case and he had no reason to believe defendant Ballou would appear at all after 11:30 a.m. Rosenstock further alleges that he was not told the matter was to trail to 1:30 p.m.; that his felony preliminary was completed by noon; that he interviewed a client in jail and appeared for a probation and sentence hearing in Pomona; that he then returned to division 38 in Los Angeles at about 3 p.m. and was advised to call his office; that when he called his office his secretary informed him that defendant Ballou had appeared and he was required in division 66; that he spoke to the division 66 clerk Galindo and said he was engaged in a felony preliminary hearing in division 38; that Judge Natoli of division 38 called division 66 and then advised Rosenstock that he was ordered by Commissioner Swasey to appear in division 66 at 9 a.m. the next morning; that at that time he appeared and was advised that he was in contempt; that he was ordered to return at 2 p.m. that day at which time he was served with the order to show cause, was taken into custody, and was eventually released on bail. His declaration is supported by the declaration of Rosenstock's secretary and Vivian Loupe.

The superior court issued the alternative writ as requested. The municipal court and Commissioner Swasey filed an answer and return to the petition. Upon consideration of all of the documents in its file, the superior court following oral argument granted the petition and directed the order to show cause vacated. This action was taken by the superior

court on its determination that Commissioner Swasey acted in excess of jurisdiction.

## ISSUE

The municipal court and Commissioner Swasey contend on appeal that the writ was improperly issued by the superior court because the act of issuing the order to show cause is a subordinate judicial duty which court commissioners are authorized to perform.

## DISCUSSION

Generally under the facts presented by this case, the trial court judge would have full discretion to exercise the court's traditional and inherent powers to punish an attorney for wilful interference with its processes by contempt. (*Lyons* v. *Superior Court* (1955) 43 Cal.2d 755, 758 [278 P.2d 681].)

The procedure for punishing contempts is authorized and outlined by statute. "Section 1211 of the Code of Civil Procedure establishes the procedure that is to be followed in adjudging persons in contempt of court. Contempt committed in the immediate view and presence of the court, known as direct contempt, may be treated summarily. All that is required is that an order be made reciting the facts, adjudging the person guilty, and prescribing the punishment. If, however, the contempt did not occur in the immediate view and presence of the court, it becomes indirect contempt and a more elaborate procedure must be followed in order to notify the person so charged and to allow him an opportunity to be heard. In such cases an affidavit must be presented to the court stating the facts constituting the contempt, an order to show cause must be issued, and a hearing on the facts must be held by the judge. (Code Civ. Proc., §§ 1212-1217.)" (*Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 407-408 [42 Cal.Rptr. 441, 398 P.2d 777].)

The requirements of due process are circumscribed in the case of direct contempt, which takes place in the presence of the court. ■ "We conclude that the procedure outlined in sections 1211, 1212 and 1217 of the Code of Civil Procedure for indirect contempt contemplates a situation in which virtually none of the facts involved in the alleged contempt have occurred in the judge's presence but have arisen entirely outside the courtroom. In such cases, due process requires notice and hearing lest the alleged contemner be convicted ex parte.

[Citation.] ■ Where counsel fails to appear, however, the offensive conduct, to wit, the absence, occurs in the presence of the court. Thus, when an absent attorney reappears in the courtroom, due process should be satisfied if the judge confronts him with the charge and offers him a reasonable opportunity to explain." (*Arthur* v. *Superior Court, supra,* 62 Cal.2d at pp. 408-409.)

■ It is conceded that, although Commissioner Swasey had been assigned to preside as judge pro tempore in division 66, at the time the facts relating to the contempt charge occurred the parties had not stipulated that he might so act in the Ballou matter. ■ A commissioner may act as temporary judge only by stipulation of the parties to the proceeding. (Cal. Const., art. VI, § 21; Code Civ. Proc., § 259a, subd. 4; *People* v. *Tijerina* (1969) 1 Cal.3d 41, 48-49 [81 Cal.Rptr. 264, 459 P.2d 680].) Rosenstock specifically objected to the commissioner's authority to issue the order to show cause in re contempt.

The issue, therefore, is whether the authority to initiate contempt proceedings has been conferred upon court commissioners, and if so whether any reasonable limitations upon such authority exist. ■ We conclude that while a court commissioner has authority to initiate contempt proceedings, the misconduct of counsel which evokes this disciplinary action is an indirect contempt until and unless a stipulation has been filed in which the parties litigant accept the commissioner's authority as temporary judge.

■ This result flows logically from the nature of direct contempt, which is a summary proceeding requiring an adjudication of fact. (*Chula* v. *Superior Court* (1962) 57 Cal.2d 199 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R. 421].) ■ A commissioner acquires authority to adjudicate the facts in a specific cause only by virtue of stipulation. (*People* v. *Nierenberg* (1976) 59 Cal.App.3d 611 [130 Cal.Rptr. 847]; *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 6 [118 Cal.Rptr. 21, 529 P.2d 53]; *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 361 [110 Cal.Rptr. 353, 515 P.2d 297].)

■ The jurisdiction of the court in direct contempt, which takes place in its presence, is based on the sufficiency of the order which must recite the facts with particularity. (*In re Gould* (1961) 195 Cal.App.2d 172, 175 [15 Cal.Rptr. 326].) ■ A proceeding for punishment of indirect contempt is commenced by an affidavit which is in effect a complaint; this "frames the issues before the court and is a jurisdictional

prerequisite to the court's power to punish. [Citations.]" (*In re Gould, supra,* at p. 175.) Commitment to jail follows hearing and adjudication of the issues, and implements the judgment. ■ The ultimate power and authority to make a prima facie determination that an order to show cause in re contempt should issue upon application by affidavit of the commissioner is appropriately within the ambit of the municipal court. We find no authority within the powers and duties of commissioners (Code Civ. Proc., §§ 259, 259a) to extend their constitutional authority so far. Thus, the procedure established for punishing indirect contempt is appropriate in such cases and the offending party is entitled to due process guarantees and a court hearing and adjudication.

This conclusion is fortified by the view the appellate court has traditionally adopted with respect to the summary disciplinary proceeding of direct contempt. ■ "[T]he power to adjudicate a direct contempt 'is necessarily of an arbitrary nature, and should be used with great prudence and caution. A judge should bear in mind that he is engaged, not so much in vindicating his own character, as in promoting the respect due to the administration of the laws; and this consideration should induce him to receive as satisfactory any reasonable apology for an offender's conduct.' Likewise, even where the finding of contempt appears essential to the proper conduct of the court's business no class of offense occurs to us in which the court should more readily search out and give effect to mitigating circumstances than in cases of direct contempts." (*Lyons* v. *Superior Court, supra,* 43 Cal.2d at pp. 762-763.)

Appellants allege that no "hearing" was ever conducted and that Commissioner Swasey "intended" that another judge should conduct a hearing in the matter. "[W]e distinguish between the power of a temporary judge to *cite* an attorney for contempt for acts occurring during the course of the proceedings in which he is qualified to act, and the power to *adjudicate* the contempt after the final determination of the underlying cause. Without question a temporary judge can cite an attorney for contempt. If the adjudication thereof is deferred to after final determination of the underlying proceeding, available to the commissioner (if the parties litigant refuse to stipulate he can hear the matter) is the established procedure for indirect contempt." (*People* v. *Nierenberg, supra,* 59 Cal.App.3d 611.) By a parity of reasoning, where the offending conduct occurs prior to stipulation, the procedure for indirect contempt must be used.

It is clear in the present case that the proceedings constituted, in effect, a summary process in which Rosenstock was threatened with incarceration. The due process requirements for indirect contempt were bypassed and he was required to post bail in order to maintain his freedom, without opportunity to be heard. The commissioner in so acting exceeded his authority.

The judgment of the superior court is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied September 14, 1976, and appellants' petition for a hearing by the Supreme Court was denied October 14, 1976.